Scileppi, J.
The relator appeals, on constitutional grounds, from an order of the Appellate Division, Second Department, which unanimously dismissed a writ of habeas corpus and remanded the relator to the custody of the Warden of the Brooklyn House of Detention.
On August 23, 1967 the relator was arrested by Detective Geik of .the New York City Police Department and was charged with assault and robbery of a police officer. Detective Mitsch, the injured officer, was working as an undercover narcotics agent with the New York City Police Department. When he was assaulted, he was attempting to arrest a narcotics seller who had attacked him with a knife. Having disarmed the assailant, the detective was holding him at gunpoint. Suddenly, Detective Mitsch was attacked by six assailants — one of whom allegedly was the relator—who knocked the gun from his hand and beat him about the head and body with cinder blocks and sticks. This resulted in his being hospitalized and incapacitated for several months.
*21 When the relator was arraigned on August 23, 1967, in the Criminal Court of the City of New York, his bail was set at $25,000. Several motions for a reduction of bail were made and granted. Bail was ultimately set at $1,000. Unable to raise $1,000 bail or to secure a bond for that amount, the relator sought a writ of habeas corpus in the Supreme Court, Kings County, on October 20, 1967. Justice Vincent Damiani dismissed that writ, saying that under the circumstances the bail was reasonable.
On October 23, 1967 the relator sought another writ of habeas corpus in the Appellate Division, Second Department. On October 25, 1967 a hearing was held before the Appellate Division. His counsel informed the court that the relator was 19 years of age and had no previous criminal record, that he had come to New York from Puerto Rico three years ago, that he had lived with his father, brother and sister at 734 East 5th Street, Manhattan, for the past two years, that he was employed as a clerk by Mobilization For Youth at a salary of $45 per week and was attending classes there in remedial reading and job training, and that present in court was a social worker, employed by Mobilization For Youth, who had known relator for two years and who agreed to supervise relator if he were released. Counsel informed the court that relator had $100 which had been collected from friends and relatives to be used for bail, and that he was in jail solely because he lacked the funds necessary to secure a $1,000 bail bond. The assistant district attorney, appearing for respondent, conceded that the facts as stated by relator’s counsel were correct to his knowledge. He argued, however, that the seriousness of the charge, the possibility of substantial punishment if relator were convicted and the fact that relator had only recently moved to New York from Puerto Rico were factors which demonstrated that the relator might flee if he were released without an adequate bond. He further argued that the issue was not whether the Justices of the Appellate Division would set the same bail as had the lower courts, but whether the Judges of the lower courts had abused their discretion in setting the bail at $1,000. After due deliberation, the Appellate Division determined that under the circum *22 stances of this case the lower courts had not abused their discretion in setting bail at $1,000 and dismissed the writ.
On this appeal, the relator presents three arguments:
(1) Given facts which demonstrate a likelihood of appearance and the existence of nonfinancial conditions of release which would increase the likelihood of appearance, the lower courts required constitutionally excessive bail.
(2) The detention of the relator solely on account of his poverty deprives him of equal protection of the laws.
(3) Pretrial detention denied relator due process of law in that (a) he is punished without trial and in violation of the presumption of innocence without any showing of overriding necessity and (b) he is prejudiced at trial and deprived of fundamental fairness in the guilt finding and sentencing process.
The problems of pretrial release arise mainly from a conflict between two competing interests. The first is the interest of the individual in maintaining his pretrial liberty, for, though charged with a crime, he is presumed to be innocent. The second is the interest of the State in assuring that one who is accused of a crime will appear at a stipulated time and place for a trial. A money bail system has been the principal device employed in this country for the accommodation of these conflicting interests.
In recent years, the money bail system has come under attack (see, e.g., Botein, The Manhattan Bail Project: Its Impact on Criminology and the Criminal Law Processes, 43 Texas L. Rev. 319; Foote, The Coming Constitutional Crisis in Bail, 113 U. Pa. L. Rev. 959, 1125; Foote, Compelling Appearance in Court: Administration of Bail in Philadelphia, 102 U. Pa. L. Rev. 1031; Freed and Wald, Bail in the United States 1964, A Report to the National Conference on Bail and Criminal Justice; McCarthy and Wahl, The District of Columbia Bail Project: An Illustration of Experimentation and a Brief for Change, 53 Geo. L. J. 675; Note: A Study of the Administration of Bail in New York City, 106 U. Pa. L. Rev. 693; Note, Bail: An Ancient Practice Reexamined, 70 Yale L. J. 966). The relator has carried the attack to this court. His brief is a general indictment of the money bail system. He argues that it is illogical to deprive an accused of his pretrial freedom simply because *23 he cannot afford bail when there are other means available of assuring his presence at trial. He points to the fact that frequently an accused is deprived of his freedom because a bail bondsman for one reason or another will not write a bond. Thus, the decision whether an accused will be released prior to trial is often effectively delegated to a person whose decision to write a bond is more often than not related to a profit motive. Relator also argues that the purpose of bail—to assure the presence of the accused • at trial—is frequently prostituted by the setting of bail which the defendant cannot meet in order to give him a taste of jail.
Lastly, he argues that the amount of bail fixed is often dictated solely by the nature of the offense charged. This occurs despite our holding in People ex rel. Lobell v. McDonnell (296 N. Y. 109) where we stated that the Judge must exercise his discretion in setting bail by taking into account the following factors: “ ‘ The nature of the offense, the penalty which may be imposed, the probability of the willing appearance of the defendant or his flight to avoid punishment, the pecuniary and social condition of defendant and his general reputation and character, and the apparent nature and strength of the proof as bearing on the probability of his conviction ’ ” (People ex rel. Lobell v. McDonnell, supra, p. 111).
The relator claims that the overwhelming evidence of the abuses of the money bail system led the Congress of the United States to enact the Bail Reform Act of 1966 (U. S. Code, tit. 18, § 3146). The Act requires that an accused be released on his own recognizance or on an unsecured promise to pay unless the United States Commissioner or Judge finds that an accused would not be reasonably likely to appear. If the judicial officer expressly determines that such a release will not reasonably assure the appearance of the person, he may either in lieu of or in addition to the above methods impose another condition or combination of conditions which will assure appearance — resorting to the least stringent that will accomplish the desired purpose.
These conditions include: (1) placing the person in the custody of a designated person or organization agreeing to supervise him; (2) placing restrictions on the travel, association, or *24 place of abode of the person during the period of release; (3) requiring the execution of an appearance bond in a specified amount and the deposit in the registry of the court, in cash or other security as directed, of a sum not to exceed 10% of the amount of the bond, such deposit to be returned upon the performance of the conditions of release; (4) requiring the execution of a bail bond with sufficient solvent sureties, or the deposit of cash in lieu thereof; or (5) imposing any other condition reasonably necessary to assure appearance as required, including a condition requiring that the person return to custody after specified hours. (U. S. Code, tit. 18, § 3146.) Having placed this statute before us, the petitioner in effect asks this court to adopt it by holding that a financial test shall not be approved for an indigent’s pretrial release unless it is first determined that no available nonfinancial alternative will reasonably assure his appearance.
We would be less than candid if we did not admit that the present bail system is subject to abuse. Nevertheless, we are not willing to accede to the relator’s request that this court adopt a nonfinancially oriented system of bail. It is our opinion that the adoption of such a system is more properly within the province of the Legislature. It is significant that all of the bail reform that has occurred to date has been the product of legislative rather than judicial action. It is equally significant that the President’s Commission on Law Enforcement and Administration of Justice recommended that State Legislatures, rather than State courts, promote bail reform along the lines set by the Bail Reform Act of 1966 (The Challenge of Crime in a Free Society, p. 132).
Even if this court were to adopt a bail reform system along the lines of the Federal Bail Reform Act of 1966, the relator would still not be entitled to ^release on his own recognizance. The Bail Reform Act directs a Judge or Magistrate to release a defendant on his personal recognizance or upon the execution of an unsecured appearance bond if he determines that such terms will reasonably assure the defendant’s presence. If the Judge determines that nonfinancial conditions of release will not reasonably secure the defendant’s presence, the Act authorizes him to impose money bail — either a specified amount of cash or a secured bond in that amount.
*25 In determining whether or not a defendant should be released on his own recognizance, a Judge would take into consideration the same factors which are applied in a financially oriented bail system, viz., ‘ ‘ The nature of the offense, the penalty which may be imposed, the probability of the willing appearance of the defendant or his flight to avoid punishment, the pecuniary and social condition of defendant and his general reputation and character, and the apparent nature and strength of the proof as bearing on the probability of his conviction ’ ” (People ex rel. Lobell v. McDonnell, supra, p. 111; see, also, Stack v. Boyle, 342 U. S. 1, 8 [Jackson, J., concurring]). Given these criteria, we cannot say that, in the circumstances of this case, the lower courts abused their discretion in setting bail at $1,000 and in denying relator’s request that he be released on his own recognizance or on $100 bail. The relator is accused of a vicious crime and is subject to a possible sentence of 13 years in prison. He has been in Hew York for only three years. While the relator contributes to the support of his father, brother and sister, there is no evidence that they are dependent upon relator for their support.
In sum, although he has certain roots in the community, it was well within the courts’ discretion to determine that those roots were not strong enough to assure relator’s appearance for trial if he were released on his own recognizance or on $100- bail.
The relator also contends that the setting of money bail in excess of what he can afford when a reasonable alternative exists for insuring his presence denies him due process and equal protection of the law. We need not pass upon this contention since we have concluded that the lower courts did not abuse their discretion in determining that $1,000 bail was necessary for assuring the relator’s presence.
Accordingly, the order appealed from should be affirmed.
Chief Judge Fuld and Judges Van Voorhis, Burke, Bergan, Keating and Breitel concur.
Order affirmed.