UNITED STATES ex rel. Roy BLAND, Petitioner,

v.

Hon. Albert NENNA, as Warden, Respondent.

UNITED STATES ex rel. William MURRAY, Petitioner,

v.

Hon. Albert NENNA, as Warden, Respondent.

Nos. 68 Civ. 340, 68 Civ. 353.

United States District Court
S. D. New York.

March 29, 1968.

Anthony F. Marra, New York City, Leon B. Polsky, of counsel, for petitioner Bland.

Philip Gelfand, New York City, for petitioner Murray.

Frank S. Hogan, Dist. Atty. of New York County, Robert D. MacLachlan, New York City, of counsel, for respondent.

## MEMORANDUM

FRANKEL, District Judge.

The two petitioners for habeas corpus are codefendants in a pending state indictment. They both assert the same claim, arising from the same circumstances: that the trial the State is about to commence would subject them to double jeopardy, violating the due process guaranteed them by the Fourteenth Amendment. Thus, the applications are appropriate for decision in a single opinion.

### I.

The pertinent facts, essentially undisputed, are these: On June 24, 1966, petitioners were indicted in several counts for robbery, grand larceny, assault, and possession of a loaded pistol. The case was marked "ready" on January 9, 1967. On February 9, the process of jury selection began, continuing to its completion on February 16, 1967. On the latter date, the prosecutor requested a continuance, which was granted over petitioners' objection, to February 20.

The absence of a material witness was the reason for the continuance. As the facts have developed, it appears that two key prosecution witnesses, Chaffin and Neal, had failed to keep scheduled appointments with the district attorney on February 14, 1967, though both were under subpoena and both had appeared for meetings on several prior occasions. Following unsuccessful efforts by the police to locate these witnesses, the prosecutor, on February 15, began body attachment proceedings which resulted in the arrest and confinement of Chaffin on February 17 but were unsuccessful in the case of Neal.

With Neal still missing on the morning of February 20, the prosecutor sought a further continuance. Again over objection, the case was put over until 2:00 p. m. the same day. At two o'clock Neal was still unlocated. Petitioners moved to dismiss the indictment for failure to prosecute. Denying that motion, the court, *sua sponte*, declared a mistrial.

Neal was apprehended on February 27, and the case was then moved for trial. Petitioners' claim of double jeopardy was denied. An adjournment was granted, however, so that petitioners, pursuing a proper course of state procedure, could press their double jeopardy contention by an application in the nature of prohibition under Article 78 of the New York Civil Practice Law and Rules.

The Article 78 petition was denied by the Appellate Division on March 20, 1967, and that decision was affirmed by the New York Court of Appeals on November 29, 1967. The decision by the State's highest Court was by the closest of divisions (4-3). The dissent (by Breitel, J.) emphasized that the New York rule as to the time when jeopardy attaches is against the great weight of authority, but mentioned also that the change sought by petitioners "would avoid the possibility of conflict with federal standards * * *." In any event, there is no question that petitioners have adequately presented in the State, and exhausted their state remedies upon, the contention that their plea of double jeopardy must be sustained as a matter of federal right under the Fourteenth Amendment.

Before reaching that argument on the merits, however, it is fitting to note, if only briefly, one or two procedural matters. First, the case is somewhat unusual in that petitioners have not yet been tried, let alone convicted, by the State. But both have been in custody, and Bland is now in custody, awaiting trial. Cf. Beasley v. Pitchess, 358 F.2d 706 (9th Cir. 1966). Murray, while not in prison, is under the constructive and practical restraints entailed in his current enlargement on bail. The respondent, quite properly, suggests no doubt in these circumstances as to the propriety of these habeas proceedings. Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); United States ex rel. Von Cseh v. Fay, 313 F.2d 620 (2d Cir. 1963); Duncombe v. New York, 267 F.Supp. 103, 109 n. 9 (S.D.N.Y.1967).

■ A subject which has been disputed is the fact that petitioners did not seek review by the Supreme Court on certiorari of the decision in their Article 78 proceeding. Assuming, without holding, that the court could in discretion take this as grounds for refusing to entertain a habeas corpus petition, see United States ex rel. Stevens v. McCloskey, 239 F.Supp. 419, 422–423 (S.D. N.Y.1965),[1] this is not an appropriate case for any such result. For one thing, with their prosecutions still pending, it is at least doubtful whether petitioners could meet the finality test for invoking the Supreme Court's jurisdiction over state decisions. Cf. Arceneaux v. State of Louisiana, 376 U.S. 336, 338, 84 S.Ct. 777, 11 L.Ed.2d 750 (1964); Republic Natural Gas Co. v. State of Oklahoma, 334 U.S. 62, 72, 68 S.Ct. 972, 92 L.Ed. 1212 (1948). Secondly, whatever may have been the case a few weeks ago, the time for certiorari seems now to have expired. This is enough for the subject as it appears in this case, except to note that there is powerful basis for petitioners' view that a certiorari application ought not in any event to be treated as if it were a remedy "available in the courts of the State" (28 U.S.C. § 2254 (b)) so that "non-exhaustion" of that procedure may bar federal habeas. See Fay v. Noia, 372 U.S. 391, 435–438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Curtis v. Boeger, 331 F.2d 675 (8th Cir. 1964); Hedberg v. Pitchess, 362 F.2d 511 (9th Cir. 1966).

## II.

On the merits, while petitioners' claim is both substantial and interesting, controlling authority requires denial of the petitions by this court of first instance.

■ As the law stands right now, the Double Jeopardy Clause of the Fifth Amendment has not been "incorporated" in anything like its full federal dimensions as part of the due process guaranteed by the Fourteenth. Palko v. State of Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937); Brock v. State of North Carolina, 344 U.S. 424, 73 S.Ct. 349, 97 L.Ed. 456 (1953); Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958); Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1958); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 462–463, 67 S.Ct. 374, 91 L.Ed. 422 (1947). The cited cases, though their bases and implications may have been weakened in recent years, cf. United States ex rel. Hetenyi v. Wilkins, 348 F.2d 844 (2d Cir. 1965), cert. denied sub nom. Mancusi v. Hetenyi, 383 U.S. 913, 15 L.Ed.2d 667 (1966), remain authoritative obstacles for this court barring acceptance of petitioners' views. Indeed, the relevant precedents—involving alleged bars to further prosecutions after full rather than abortive trials—presented more compelling claims of "fundamental unfairness" (*Hetenyi*, supra, 348 F.2d at 859) than this one.

■ What petitioners seek in substantial effect is the application to state cases of the rule governing federal prosecutions under the close decision in Downum v. United States, 372 U.S. 734, 83 S. Ct. 1033, 10 L.Ed.2d 100 (1963). That case represents the first (and, thus far, the only) occasion on which the Supreme Court has actually prohibited a retrial after a mistrial. Cf. United States v. Perez, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); Keerl v. State of Montana, 213 U.S. 135, 29 S.Ct. 469, 53 L.Ed. 734 (1909); Wade v. Hunter, 336 U.S. 684 (1949); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); United States v. Tateo, 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). See Note, Double Jeopardy: The Reprosecution Problem, 77 Harv.L.Rev. 1272, 1273–74 (1964).

In that *federal* prosecution, when the case was called for trial, both sides announced ready, and a jury was selected,

---

1. Affirmed, and later reversed, on other grounds, 345 F.2d 305 (2d Cir. 1965), 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966).

sworn, and instructed to return that afternoon. In the afternoon the prosecution requested that the jury be discharged because of the absence of a key witness on two of the six applicable counts. Over petitioner's objection, the judge discharged the jury, denying a motion for dismissal of the two counts for want of prosecution and for continuation of the trial on the other counts. Two days later, the case was tried over a plea of former jeopardy, and petitioner was convicted on all counts.

The majority's account of the facts pointed out that Downum's case was one of twelve set for call that week. Subpoenas for 100 witnesses had been delivered to the marshal for service, but the missing prosecution witness had not been served or located on the day before the first jury was selected. The Court (372 U.S. at 737, 83 S.Ct. at 1035) found language from a Ninth Circuit case to be applicable:

> "The fact is that, when the district attorney impaneled the jury without first ascertaining whether or not his witnesses were present, he took a chance. While their absence might have justified a continuance of the case * * *, the question presented here is entirely different from that involved in the exercise of the sound discretion of the trial court in granting a continuance in furtherance of justice. The situation presented is simply one where the district attorney entered upon the trial of the case without sufficient evidence to convict." Cornero v. United States, 48 F.2d 69, 71, 74 A.L.R. 797 (9th Cir. 1931).

While Downum, at least for its particular facts, fixes the point at which jeopardy attaches in federal prosecutions, the Court noted there that it was not confronted with one of the "extreme cases" (372 U.S. at 736, 83 S.Ct. at 1033) to which, it may be said, "the basic core" (Hetenyi, supra, 348 F.2d at 855) of the double jeopardy guarantee would apply. And while such cases "do not mark the limits of the guarantee" for federal purposes (Downum, 372 U.S. at 736, 83 S. Ct. at 1034), they do appear, in the present state of the authorities, to define the scope of the relevant Fourteenth Amendment protection as it is enforceable at this level of the federal judiciary.

That situation may be destined for change, as petitioners urge, in the near future. If so, the possibility is not predictable or foreseeable with anything resembling the confidence that might justify a district court's disregard of Supreme Court decisions which have neither been overruled nor tacitly overwhelmed by broad waves of doctrinal change. Cf. Barnette v. West Virginia State Board of Ed., 47 F.Supp. 251, 252–253 (S.D.W.Va.1942), aff'd, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Gold v. DiCarlo, 235 F.Supp. 817, 818–820 (S.D.N.Y.1964), aff'd, 380 U.S. 520, 14 L.Ed.2d 266 (1965).

Given this state of the governing law, petitioners' argument must be rejected by this court. In so holding the court assumes that if this were a federal criminal proceeding petitioners would prevail under Downum. The assumption seems appropriate for present purposes even though it is arguable that petitioners' case is in possibly relevant respects weaker than Downum's.[2] For one thing, such a possible argument does not seem powerful. More importantly, since this court must reject the claim that Downum applies to state proceedings, there is no point in speculating whether the facts for the petitioners are less favorable (they are not seriously asserted to be more favorable) to the double jeopardy defense than those on which Downum prevailed.

---

2. In Downum, it will be recalled, the evidence of the missing witness related to only two of six counts, and the prosecution could have proceeded with the first jury on the remaining four. The Supreme Court stressed that fact, which may differentiate the present proceeding (since the missing witness here was the complainant in five of the seven counts), and noted that "Each case must turn on its facts." 372 U.S. at 737, 83 S.Ct. at 1035.

## III.

There remains for disposition an application by petitioner Bland for release on bail during this habeas proceeding or, as the event frames the issue, while he may choose to appeal from the decision now being rendered.

As has been noted, both petitioners are still awaiting trial. A short time ago, after the present petitions were filed, the state court ordered an end to the adjournment granted for prosecution of the Article 78 proceeding. Their trial is now scheduled to begin on April 4, 1968. When petitioners first came to this court, both were in jail, having been unable to make bail in the amount of $10,000, which had been fixed after the decision of the Court of Appeals on November 29, 1967.[3] Upon an initial hearing, this court expressed the tentative view that the double jeopardy problem was substantial, that the increase of the state bail requirement after the decision of the Court of Appeals might well have been warranted, but that the state trial court might wish to reconsider the problem in light of the fact that the constitutional issue remained open for exploration here. With the matter in that posture, the parties appeared once more in the state court. That tribunal, in what seems to have been a most agreeable display of bilateral comity, cf. United States ex rel. Epton v. Nenna, 281 F.Supp. 388 (S.D.N.Y.1968), reduced bail once again to the sum of $1,000. Murray was freed again (see note 3, supra) on that basis. Bland remains incarcerated.

■ While Bland's position is not without considerable appeal, it is concluded that his application for release on bail by this court should be denied. There has been no adequate showing, considering the gravity of the charges against him, that the $1,000 figure is excessive in his case even though it appears to amount for him to the practical denial of his release on bail. The papers tell little about his record, his propensities, or other factors that might touch the likelihood of flight. What they do tell, including his record of prior offenses, is at best mixed in its impact. There is no basis for saying that the action of the state trial judge in setting bail was so fundamentally unfair or unwarranted as to justify the extraordinary pretrial relief petitioner seeks. Petitioner has failed to seek review in the state courts of this bail question. And his trial, delayed at his instance and for his benefit, is imminent.

What has been said here is not meant to suggest that the setting of bail in a sum defendant cannot post (or persuade a bondsman to guarantee) is not a problem of large dimensions, stirring possibly serious questions under the Eighth and Fourteenth Amendments. Cf. People ex rel. Gonzales v. Warden, Brooklyn House of Detention, 21 N.Y.2d 18, 286 N.Y.S.2d 240 (1967), cert. denied, 390 U.S. 973, 88 S.Ct. 1093, 19 L.Ed.2d 1185 (1968); Bandy v. United States, 81 S.Ct. 197, 5 L.Ed.2d 218 (1960) and 82 S.Ct. 11, 7 L.Ed.2d 9 (1961) (opinions of Mr. Justice Douglas in Chambers); Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa.L.Rev. 959, 1125 (1965). But the present case—where the claim is brought at the end rather than the beginning of a long period of pretrial detention, and where neither the record nor the time afforded allows for adequate study of the potential difficulties—is not an appropriate one for considering the kind of relief petitioner seeks.

For the foregoing reasons, the petitions for habeas corpus and Bland's application for bail are denied. It is so ordered.[4]

---

3. Before that date, Murray had been free on $1,000 bail. Bland has remained in substantially continuous custody, unable to post the $1,000.

4. Counsel for petitioners have indicated their intention to appeal. There is substantial ground for review. A certificate of probable cause is hereby granted.