**UNITED STATES ex rel. Lumumba Abdul SHAKUR et al., Petitioners,**

v.

**COMMISSIONER OF CORRECTIONS, George F. McGrath, Respondent.**

**No. 69 Civ. 3394.**

United States District Court
S. D. New York.
Aug. 26, 1969.

William M. Kunstler, Gerald B. Lefcourt, New York City, for petitioners.

Frank S. Hogan, Dist. Atty. for the County of New York, New York City, for respondent; Joseph A. Phillips, Asst. Dist. Atty., New York City, of counsel.

Elizabeth B. DuBois, New York City, for amicus curiae, NAACP Legal Defense Fund.

PALMIERI, District Judge.

The fourteen petitioners, thirteen of whom are members of the Black Panther Party for Self-Defense, await imminent trial before New York State courts on charges of conspiracy to commit crimes of violence by bombing and other means. The crimes for which they have been indicted include four counts of attempted murder, arson in the first degree, attempt to commit arson, possession of weapons, and conspiracy. According to one counsel for defendants, the minimum sentences that would be imposed on defendants if they were to be found guilty as charged would amount to "some seventy years, and maximum sentences of something astronomical." [1] They are again before this Court upon petitions for writs of habeas corpus. 28 U.S.C. § 2254. Their prior petitions for writs of habeas corpus were ruled upon by this Court in an opinion dated June 19, 1969, 303 F.Supp. 299. The discussion which follows assumes a familiarity with that opinion.

The basis for petitioners' alleged grievances is that they have been denied reasonable bail, and that the bails presently set for the petitioners are exorbitant and excessive and in violation of the eighth and fourteenth amendments to the Constitution.

The bail originally fixed for all petitioners was $100,000 each. On motions for reduction of bail, justices of the

1. Transcript of argument before Justice Murtagh at 8, People v. Shakur, No. 1848-69, Sup. Ct.N.Y.Cty. (May 5, 1969).

New York courts reduced the bail to $50,000 each for petitioners Tabor and Squires, to $25,000 for petitioner Josephs, and to $10,000 for petitioner Epps. Petitioner Epps has posted bail and is at liberty. The other petitioners are presently incarcerated in lieu of bail.

### The Exhaustion Problem

█ A basic requirement to petitioners' right to relief from this Court rests upon their prior exhaustion of state remedies. This is made clear by the statute upon which the petitioners proceed, 28 U.S.C. § 2254(b), and by numerous decisions. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950); United States ex rel. Kling v. LaVallee, 306 F.2d 199 (2d Cir. 1962). Indeed, it was upon this ground that the bail issues posed by petitioners' prior applications were left undecided by this Court.

In this proceeding, however, two of the petitioners, Tabor and Squires, have concededly exhausted their state court remedies since the New York Court of Appeals affirmed an order fixing their bails at $50,000 each.

The other petitioners, following New York procedure, have appeals pending before the New York Court of Appeals after unsuccessful attempts to reduce their bails by way of habeas corpus applications before the lower state courts. See, People ex rel. Shapiro v. Keeper of City Prison, 290 N.Y. 393, 49 N.E.2d 498 (1943); Gilbert Bliss, Bk. 2, CPLR, § 7002; Code of Criminal Procedure, §§ 517, 566. These pending appeals have not yet been argued before the New York Court of Appeals and it appears likely that the petitioners' trial may commence before a review by that court can be obtained. The earliest date upon which the matter can be heard by the Court of Appeals is September 23, 1969, but because of other business, and even on an expedited basis, it appears likely that it will not be reached until October. Since the petitioners may be foreclosed by these time limitations from obtaining the relief they seek before trial, they will be deemed to have exhausted their state remedies for the purposes of these proceedings. The statute pursuant to which petitioners are before this Court appears to contemplate precisely such a situation in referring to "the existence of circumstances rendering such process ineffective to protect the rights of the prisoner," 28 U.S.C. § 2254(b), as an alternative to a showing that the remedies available in the courts of the state have been exhausted. See Frisbie v. Collins, 342 U.S. 519, 522, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Darr v. Burford, 339 U.S. 200, 210, 70 S.Ct. 587, 94 L.Ed. 761 (1950).

### The Bail Standards Applied by the New York Courts

█ The traditional bail standards applied in New York are entirely consistent with the principles enunciated by the Supreme Court in Stack v. Boyle, 342 U.S. 1, 8, 72 S.Ct. 1, 96 L.Ed. 3 (1951) and have been set forth in People ex rel. Lobell v. McDonnell, 296 N.Y. 109, 111, 71 N.E.2d 423 (1947), recently approved by the New York Court of Appeals in People ex rel. Gonzalez v. Warden, 21 N.Y.2d 18, 25, 286 N.Y.S.2d 240, 233 N.E.2d 265 (1967), cert. denied, 390 U.S. 973, 88 S.Ct. 1093, 19 L.Ed.2d 1185 (1968). A New York judge is required to take the following factors into account when exercising his discretion in setting bail:

" 'The nature of the offense, the penalty which may be imposed, the probability of the willing appearance of the defendant or his flight to avoid punishment, the pecuniary and social condition of defendant and his general reputation and character, and the apparent nature and strength of the proof as bearing on the probability of his conviction.' " People ex rel. Lobell v. McDonnell, 296 N.Y. 109, at 111, 71 N.E.2d 423, quoted with approval in People ex rel. Gonzalez v. Warden, supra, 21 N.Y.2d at 25, 286 N.Y.S.2d at 244, 233 N.E.2d at 269.

In approving of the bails set for petitioners Tabor and Squires, the Court

of Appeals found that these "classic tests for fixing or denying bail" had been met, and concluded by stressing that the high bail fixed imposed a correlative obligation on the part of the prosecution to afford the petitioners an immediate trial.[2] Of course, the defendants' right to a speedy trial, a guarantee that prevents "undue and oppressive incarceration prior to trial," United States v. Ewell, 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966), acquires special significance under these circumstances and is appropriately a matter of concern to the federal as well as to the state courts since this right "is as fundamental as any of the rights secured by the Sixth Amendment." Klopfer v. North Carolina, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967).

### Intervention by the Federal Court in the Matter of Bail Set by the State Court

■ Federal courts have the power to review the actions of state courts in denying or fixing bail when it is alleged that the state action violates applicable provisions of the Constitution. In re Shuttlesworth, 369 U.S. 35, 82 S.Ct. 551, 7 L.Ed.2d 548 (1962); Brown v. Fogel, 387 F.2d 692 (4th Cir. 1967); Dameron v. Harson, 364 F.2d 991 (5th Cir. 1966), aff'g on opinion below, 255 F.Supp. 533 (W.D.La.1966); Mastrian v. Hedman, 326 F.2d 708 (8th Cir. 1964), cert. denied, 376 U.S. 965, 84 S.Ct. 1128, 11 L.Ed.2d 982 (1964); United States ex rel. Covington v. Coparo, 297 F.Supp.

203 (S.D.N.Y.1969). But the federal court may not substitute its judgment for that of the state court It can only act when the state court's action has violated constitutional requirements.

The language of the court in Mastrian v. Hedman, *supra,* is peculiarly applicable here. It is accepted as authoritative guidance in this case and reads in part as follows:

"Neither the Eighth Amendment nor the Fourteenth Amendment requires that everyone charged with a state offense must be given his liberty on bail pending trial. While it is inherent in our American concept of liberty that a right to bail shall generally exist, this has never been held to mean that a state must make every criminal offense subject to such a right or that the right provided as to offenses made subject to bail must be so administered that every accused will always be able to secure his liberty pending trial. * * *

".* * * The prohibition of the Eighth Amendment against excessive bail could perhaps have separate force as a due process violation in a situation of unreasonable legal requirement, such as (in artificial example) a state statutory prescription that a court must require a minimum of $1,000,000 bail for any offense of automobile theft.

*   *   *   *   *   *

"There might have been room for a difference in judgment on the amount of bail, but consideration by a federal

2. The memorandum of the Court of Appeals approving these bails reads as follows:

"There has been a sufficient showing by respondent that not only the seriousness of the charges but that the surrounding circumstances suggest that relators may not be available for trial. Particularly significant are the undisputed assertions by respondent that relators along with the alleged co-conspirators arrested with them were connected with the seizure of large quantities of unusual contraband usable only in terroristic activities. Such seizures coupled with the fact that relators do not have substantial

roots in the community, makes likely that they would become fugitives, as are some of the alleged co-conspirators. This meets the classic tests for fixing or denying bail (see People ex rel. Gonzalez v. Warden, 21 N.Y.2d 18, 25, 286 N.Y.S.2d 240, 244, 233 N.E.2d 265, 269). Of course, in view of the high bail fixed, the People are obliged to stand ready for immediate trial, as they assert they are. Consequently, the broad constitutional issues raised by relators are not relevant." People ex rel. Tabor v. McGrath, 25 N.Y.2d 804, 303 N.Y.S.2d 665, 250 N.E.2d 712 (filed June 11, 1969).

court could not be asked or given upon that basis. A federal court would not be entitled to act in substitution of judgment for that of the state court. What the state court did would have to be beyond the range within which judgments could rationally differ in relation to the apparent elements of the situation. It would have to amount in its effect to legal arbitrariness in the administration of the bail right provided, so as to constitute a violation of due process, or to discriminatoriness in the application of the right as against petitioner, so as to constitute a violation of equal protection." 326 F.2d 708, at 710–711.

*Under the Applicable Federal Rule The Petitioners Have Not Demonstrated a Basis for Relief*

█ Since it is the opinion of this Court that petitioners have failed to demonstrate that the bail fixed for each of them is "beyond the range within which judgments could rationally differ," within the intendment of the *Mastrian* case, *supra*, their petitions must be denied.

The Court cannot say that the actions of the state judges who fixed bails for petitioners have been shown to be either arbitrary or discriminatory.

These bail determinations have not been shown to be arbitrary since the charges in this case are of a most serious nature involving a conspiracy to commit crimes of violence against the people generally and under circumstances which would have amounted to terrorism against the law-abiding community. The penalties that may be imposed on petitioners if they should be found guilty are long terms of imprisonment. And the possibility of their being convicted after trial cannot be considered illusory since petitioners did not dispute that

when some of them, who are alleged conspirators, were arrested, large quantities of contraband generally useable only in terroristic activities were found in their possession and seized.

In addition, many of the petitioners have criminal records, one, petitioner Collier, having been sentenced to five years imprisonment by this court for a conspiracy to blow up the Statute of Liberty. See United States v. Bowe, 360 F.2d 1 (2d Cir. 1966).[3] Moreover, five alleged co-conspirators who have not been arrested, including one with a stable employment record and family roots in the community, have become fugitives. These facts indicate that the actions of the New York courts in fixing bail in varying amounts for petitioners was an attempt to secure from each petitioner "adequate assurance that he [would] stand trial and submit to sentence if found guilty." See Stack v. Boyle, 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951).

Of course, evaluations of this nature are not without difficulty and are frequently fraught with some element of speculation. But on the basis of all the facts presented to this Court, and in the light of the applicable criteria, it cannot be said that any of the numerous state courts[4] which have dealt with petitioners' bails have acted arbitrarily.

Nor have petitioners shown that they have been discriminated against in the amount of bail set for them. There has been no adequate showing that other persons charged with crimes of the nature and scope of the crimes with which petitioners are charged have been admitted to lesser bail by the New York courts.

Since petitioners have failed to demonstrate either arbitrariness or discrimination in the amount of bail fixed for each of them, their petitions must be denied.

---

3. The dockets of this court indicate that a sentence of ten years was imposed upon Collier in the first instance, and later reduced to five years.

4. Counsel for the petitioners stated upon the argument that "some 16 state court judges" had passed upon the bails in this case.

*The Petitioners Have Failed to Extend Adequate Cooperation to the State Courts in Applying for Reductions of Bail*

■ "The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. Ex Parte Milburn, 1835, 9 Pet. 704, 710, 9 L.Ed. 280." Stack v. Boyle, 342 U.S. 1, 4–5, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). This assurance can take many and varied forms. *Cf.*, Brown v. Fogel, 387 F.2d 692 (4th Cir. 1967). One of its essential prerequisites is a disposition of cooperation and sincerity towards the court which must pass upon the adequacy of such an assurance. The petitioners here have left much to be desired in this respect.

When the petitioners were arraigned before the state court and held in lieu of bail of $100,000, the court granted them an opportunity to submit affidavits so that the court could re-evaluate the amount of bail theretofore fixed, and thereupon adjourned the entire matter for eight days, to April 11, 1969, for this purpose. No affidavit was filed by any of the petitioners. Instead, a joint affidavit was filed by three of the six attorneys who have been representing them, in which it was stated that because of numerous professional engagements and because the petitioners were incarcerated in different detention facilities they were unable to submit them. The petitioners showed no disposition to file any affidavits and to date none has been filed, either before the state courts or this Court. The persistent failure of petitioners to submit full and persuasive affidavits in their behalf, insisting all the while upon a court hearing at which they could testify, is conduct calculated to obfuscate the facts and to withhold assistance from the court in a matter in which the court had every right to establish the procedures for the purpose of marshalling the relevant facts.

Whether or not the New York County Supreme Court should have held an evidentiary hearing in order to obtain the facts from the defendants was entirely a matter for its discretionary decision. As an overburdened court it quite understandably requested that this matter be submitted to it by way of affidavits, probably because its trial facilities were preempted by other matters. In any event, and in spite of the court's request for affidavits of the defendants, the chief defense counsel sent a telegram[5] to the court on the day before the bail hearing requesting the production of the defendants at the bail hearing, and insisted at the time of the hearing that the facts should be adduced by oral testimony. At no time did he make a request for additional time to submit affidavits. These actions were not calculated to assist the court but rather to inflict upon it additional and unnecessary burdens. To this day, despite the court's request, no affidavit has been filed by any of the petitioners setting forth the relevant facts concerning their backgrounds and which might have been of assistance to the court in the setting of bail.

It should be noted in passing that the bails of two petitioners, Epps and Josephs, were nevertheless lowered to $10,000 and $25,000, respectively, by the New York County Supreme Court and that Tabor and Squires secured reductions to $50,000 by the Queens County Supreme Court.

*The Attack on the Money Bail System*

■ The NAACP Legal Defense and Educational Fund, Inc. has been permitted to appear as *amicus curiae*. It has filed a voluminous brief attacking the validity of the money bail system of

---

5. The telegram, dated April 10, 1969, read as follows:
"IMPOSSIBLE TO OBTAIN AFFIDAVITS FOR BAIL HEARING TOMORROW INDICTMENT NO. 1848/69. REQUEST ALL INCARCERATED DEFENDANTS BE PRESENT IN COURT TOMORROW FOR QUESTIONING ON BACKGROUNDS FOR BAIL PURPOSES."

the New York State courts and the United States generally, essentially on the ground that the requirements for the posting of bail result in discriminatory harshness upon the poor and upon the Negro population, many of whom are poor. Substantially the same arguments as those expressed here by the *amicus* were made to the New York Court of Appeals and were rejected in its opinion in People ex rel. Gonzalez v. Warden, *supra*.

The money bail system traditionally used by most of the courts in the United States, both in the state and federal systems, has in recent years been the subject of critical scrutiny.[6] Indeed, the proceedings and reports of the National Conference on Bail and Criminal Justice which preceded the enactment of the Federal Bail Reform Act of 1966 reflected an acute awareness of the problems inherent in the system. Without attempting to explore the many facets of these problems, since to attempt to do so would extend the discussion in this opinion far beyond the necessities of the case, it is sufficient to state that although the money bail system may, under certain circumstances, create a disadvantage for those who are economically underprivileged, it is so thoroughly a part of our traditional procedures in criminal cases that nothing short of legislation can appropriately reform it. This was substantially the conclusion of

the New York Court of Appeals in People ex rel. Gonzalez v. Warden, 21 N.Y.2d 18, 286 N.Y.S.2d 240, 233 N.E.2d 265 (1968), cert. denied, 390 U.S. 973, 88 S.Ct. 1093, 19 L.Ed.2d 1185 (1968), and this conclusion is adopted by this Court.

In any event, the inequities of the money bail system have been sought to be attenuated in the federal system, by the Federal Bail Reform Act of 1966; and many states, including New York, have adopted ameliorative procedures while remaining alert to the need for study in the field of improved bail standards.[7] Consequently, the basic premises upon which bail is fixed in the New York State courts are essentially consistent with principles construed to be appropriate by the Supreme Court of the United States and can be regarded as consistent with the respective interests of the person accused of a crime and the legitimate concerns of the law-abiding community.

### Conclusion

The petitioners have failed to demonstrate any bail problems of constitutional dimensions. The New York State courts have applied standards which are designed properly to evaluate the petitioners' right to bail. On the basis of such facts as have been adduced before the courts, including this one, it cannot be said that the petitioners have been sub-

---

6. Botein, The Manhattan Bail Project: Its Impact on Criminology and the Criminal Law Processes, 43 Texas L.Rev. 319; Foote, Compelling Appearance in Court: Administration of Bail in Philadelphia, 102 U.Pa.L.Rev. 1031 (1954); Note: A Study of the Administration of Bail in New York City, 106 U.Pa.L.Rev. 693 (1958). Note, Bail: An Ancient Practice Reexamined, 70 Yale L.J. 966 (1961); McCarthy and Wahl, The District of Columbia Bail Project: An Illustration of Experimentation and a Brief for Change, 53 Georgia L.J. 675 (1965); Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa.L.Rev. 959, 1125 (1965); Freed and Wald, Bail in the United States 1964, A Report to the National Conference on Bail and Criminal Justice; Silverstein, Bail in the State

Courts, 50 Minnesota L.Rev. 621 (1966); Goldfarb, Ransom, A Critique of the American Bail System (1966); Foote, Studies on Bail, U. of Pa.Inst. of Legal Research (1966); Sachs, Indigent Court Costs and Bail: Charge Them to Equal Protection, 27 Maryland L.Rev. 154 (1967); Note: Bail Reform in the State and Federal Systems, 20 Vanderbilt L. Rev. 948 (1967); Smith, Bail or Jail: Toward An Alternative, 21 Florida L. Rev. 59 (1968).

7. See Memorandum in Support and Explanation of Proposed Criminal Procedure Law (S.Int. 4624, A.Int. 6579) by the Commission on Revision of the Penal Law and Criminal Code, 1969 McKinney's Sess.Law News, A–122 (April 10, 1969); see footnote 6, supra.

jected to any arbitrariness, discrimination, or illegality.

The petitions are dismissed. It is so ordered.