Mitchell D. Schweitzer, J.
These are motions by defendants Winter and Wolf for an order of dismissal of indictments pursuant to section 668 of the Code of Criminal Procedure upon the ground that defendants have been deprived of their right to a speedy trial.
Three indictments are involved. The first indictment (No. 2565-54) was found on July 27, 1954. It charged defendant Winter and three others with the crime of conspiracy and with various violations of sections 270-a and 270-d of the Penal Law. Defendant Winter was arraigned on that indictment on July 29, 1954, at which time he was admitted to bail. Thereafter, the indictment appeared on the Trial Calendar on four occasions, the last one being April 21, 1955.
The second indictment (No.- 43-55) was found on January 5, 1955. It charged defendant Winter as sole defendant with additional violations of sections 270-a and 270-d of the Penal Law. The third indictment (No. 45-55) was also found on January 5, 1955. It charged defendants Winter and Wolf jointly with the crimes of conspiracy, attempt to suborn perjury in the first degree, inducing another to commit perjury, and attempting fraudulently to induce a witness to give false testimony and to withhold true testimony.
Arraignment under the second and third indictments took place on January 6, 1955, at which time both defendants were admitted to bail. These indictments appeared on the Tria] Calendar 11 times, the last time being April 4, 1956.
In the latter part of June, 1958 — almost four years after the finding of the first indictment, and about three and one-half years after the return of the second and third indictments — the District Attorney’s office notified defendants’ counsel that the indictments would be placed on the calendar of July 1, 1958, for the purpose of fixing a future date for trial. This notification *207 by the Assistant District Attorney took place 38 months after the first indictment (No. 2565-54) last appeared on the Trial Calendar, and 26 months after the second and third indictments (Nos. 43-55, 45-55) were last on the Trial Calendar. Thereupon defendants made the instant motions to dismiss the indictments. They contend that the prosecution has violated its duty to bring the cases to trial within a reasonable tim,e, that inordinate delay has occurred without defendants’ consent or acquiescence and that they have been deprived of their right to a speedy trial.
The guarantee of a speedy trial is embodied in the Sixth Amendment to the United States Constitution and in the Constitutions of many States. In our own State it is contained in section 8 of the Code of Criminal Procedure and has been part of our statutory law for almost a century. That section declares: “In a criminal action the defendant is entitled * * * To a speedy and public trial.” The same guarantee is reiterated in section 12 of the Civil Eights Law.
The remedy by which a defendant may enforce his right to a speedy trial is given by section 668 of the Code of Criminal Procedure, which provides: “ If a defendant, indicted for a crime whose trial has not been postponed upon his application, be not brought to trial at the next term of the court in which the indictment is triable, after it is found the court may, on application of the defendant, order the indictment to be dismissed, unless good cause to the contrary be shown.”
So important a matter as dismissing an indictment because of undue delay in bringing the case on for trial calls for the exercise of extreme caution. It necessitates a decision consonant with competing rights of equal importance. Concededly, defendants ’ right to a speedy trial is not absolute and unyielding, regardless of the circumstances causing the delay. The People’s right to effective enforcement of the criminal law requires that allowance be made for a reasonable time to prepare for trial and for reasonable accommodation to the pressures and needs of those charged with the duty of administering the law. And, of course, no defendant has a right to complain of delay attributable to his own conduct. His right to a speedy trial is deemed waived if he delays the prosecution by dilatory pleas or motions (People v. Lanigan, 22 Cal. 2d 569) or if he consents to or fails to object to a postponement sought by the District Attorney (People v. Prosser, 309 N. Y. 353, 360; People v. White, 2 N Y 2d 220; People v. Godwin, 2 A D 2d 846, affd. 2 N Y 2d 891).
*208 On the other hand, a waiver of the right to a speedy trial is not to be lightly inferred from equivocal circumstances. The wrong and the harm that may result from undue delay in the prosecution of a criminal charge are sufficiently serious (People v. Prosser, supra, pp. 356-357) to require evidence from which a waiver or acquiescence in such delay may reasonably be inferred. Absent such evidence, we may not presume acquiescence in the loss of fundamental rights (Johnson v. Zerbst, 304 U. S. 458, 464; Taylor v. United States, 238 F. 2d 259, 261; Matter of Provoo, 17 F. R. D. 183, affd. 350 U. S. 857).
It should also be noted that there is no rigid formula by which to determine what constitutes undue delay or ‘ ‘ good cause ’ ’ for such delay. Each case must necessarily be examined in the light of its particular facts. “ The inquiry in each case is factual” (People v. Prosser, supra, p. 360).
Briefly stated, the District Attorney’s position in resisting defendant’s motions is (1) that there has been no undue delay in bringing the defendants to trial, (2) that on April 4, 1956, the defendants consented that all three cases be marked off the calendar with the understanding that they would be tried at some future time, (3) that there was “good cause” for the delay of over two years that followed thereafter, (4) that under the law “ A defendant’s silence and failure to assert his right to an immediate trial will also constitute a waiver,” and (5) that in any event the defendants were not prejudiced by the delay.
It should be noted at the outset that a waiver may not be predicated on the mere failure of the defendants to assert their right to a prompt trial. The important fact to bear in mind is that, under our practice, a defendant is not empowered to bring an indictment on for trial. That power resides exclusively in the hands of the District Attorney and carries with it the corresponding obligation to prevent unreasonable delay. Thus, a defendant has no affirmative duty to demand a prompt trial. He has the right to assume that if the District Attorney intends to prosecute the indictment, it will be done with reasonable dispatch. The only right given to a defendant is that if there be undue delay, for which he is not chargeable by reason of waiver, acquiescence or other conduct, he may move for a dismissal of the indictment.
Such is the settled law of this State as announced by the Court of Appeals in People v. Prosser (309 N. Y. 353, supra), where Judge Ftjld, speaking for a unanimous court, said (p. 358): “ the burden of proceeding promptly is on the state, not on the defendant * * *. It is the state which initiates *209 the action and it is the state which must see that the defendant is arraigned. It is likewise the state which has the duty of seeing that the defendant is speedily brought to trial. And from this it follows that the mere failure of the defendant to take affirmative action to prevent delay may not, without more, be construed or treated as a waiver. The plain language of section 668 unerringly points that conclusion. In effect, it calls for dismissal of an indictment, if its trial is unduly put off, £ unless good cause to the contrary be shown.’ As we read the statute, it is incumbent upon the prosecution to establish £ good cause ’ for its own delay, and not simply the fact that the defendant has failed to demand a trial.”
Turning to the facts, we find that the transcripts of the calendar proceedings coupled with uncontradicted statements in the affidavits submitted in support of defendants’ motions negate any inference that defendants waived their right to a speedy trial.
All three cases appeared on the Trial Calendar on April 21, 1955. The affidavits state that a conference was held at the Bench, that counsel for the defendant Winter informed the court that he was ready for trial on any day the court might set, asked that an early trial date be fixed and requested to be told which of the three indictments the District Attorney intended to try first. In response to the latter request, the Assistant District Attorney, who was in charge of the prosecution, promised to notify defense counsel within a few days. The minutes merely reflect that there was a conference at the Bench and that thereafter all three cases were put over to May 12,1955 “for trial in Part Eight.” The statements in the affidavits, however, stand uncontradicted.
It is also uncontradicted that on April 28, 1955, counsel for defendant Winter called the District Attorney’s office and was told by the assistant in charge that he had not quite made up his mind which case he would try first and that counsel would be advised of that at a later date.
Despite the fact that all three cases had been put over until May 12 11 for trial in Part Eight, ’ ’ none of these cases appeared on any Trial Calendar for that day, and counsel for Winter was informed by the clerk of this court that the District Attorney had failed to put them on the calendar.
Thereafter only the second and third indictments appeared on the calendar for January 16,1956. But there was no appearanee by either the People or the defendants on that date. The reason for this was that the Assistant District Attorney in charge had informed the defense that the cases were again *210 going to be marked off and would be placed on tbe calendar for January 30, 1956.
On January 30, the Assistant District Attorney requested that the cases be adjourned to February 2, 1956. Again, counsel for defendant Winter sought to ascertain which indictment the People intended to try first. Defendant Winter’s affidavits allege, without dispute, and the minutes of the adjourned proceedings likewise indicate, that Judge Culkin directed the District Attorney to supply that information on the adjourned date, namely, February 2, 1956.
On that day the assistant in charge of the cases failed to appear in court, but another Assistant District Attorney conveyed his request that the two cases then appearing on the calendar, that is, the second and third indictments, be adjourned until February 20, to another Part. Thereupon the assistant in charge was sent for, and when he arrived the court stated: ‘ ‘ As I understood the last time the case was on the calendar the District Attorney’s office was to indicate to the defense counsel which indictment they were going to proceed to trial on. ’ ’
Winter’s counsel emphasized that he had tried, without avail, to find out for a year and a half which case was going to be tried first, stating: “I have asked him time and again. I can’t find out. Now we are on the eve of trial. I think I ought to know, Tour Honor.”
The court then addressed the Assistant District Attorney and said: ‘ ‘ Are you going to pick out one of these ? and which indictment? or are you going to try the three of them? That is all he wants to know. ’ ’
Thereupon the Assistant District Attorney told the court that the only purpose of the adjournment to February 20 was to enable him to locate a Part in which the case could be tried and that he would advise defense counsel by February 6 which of the three indictments he intended to try first.
On that date, Winter’s counsel was informed that the District Attorney had elected to try the first indictment. But a few days later associate defense counsel, a Mr. Pitcher, was informed by the District Attorney that the trial of the case would be put over until March 28, 1956. Then Winter’s counsel learned that the date was changed to April 4, 1956.
On this date, for some unexplained reason, the first indictment did not even appear on the calendar. Instead, only the second and third indictments appeared. The Assistant District Attorney conceded that the first indictment should have been on the calendar and then recommended that ‘ ‘ we mark these two Winter cases off the calendar, with the understanding that *211 before we restore them to trial we give Mr. Corbin (Winter’s counsel), notice of three or four weeks, which I am happy to do.”
Since it had been agreed that the first indictment would be tried before the other two, associate defense counsel for Winter concurred in the recommendation. And when the clerk inquired whether that included the case against the defendant Wolf, the Assistant District Attorney replied: “'Without consulting Mr. Segal who represents Wolf in this case and two other companion cases I think it would be all right with him.”
A curious fact about the April 4, 1956, proceeding is that despite the Assistant District Attorney’s previous agreement to try the first indictment as above noted, he remarked that he intended to try another of a group of cases involving “ ambulance chasing lawyers ’ ’ before proceeding to trial of the first indictment in this case.
The District Attorney thereafter failed to restore the first indictment to the calendar, fixed no date for the trial thereof, and likewise took no action with regard to the other two indictments. The three cases continued in this posture of inaction from April 4, 1956, until the. latter part of June, 1958, when defendants’ counsel were notified that all three cases would be on the calendar on July 1, 1958, for the purpose of fixing a future trial date. A period of almost 27 months of inaction had thus elapsed, in no way attributable to the defendants.
It is clear from the foregoing that counsel for defendant Winter made every effort to secure from the District Attorney an answer as to which indictment he intended to try first, and demonstrated readiness at all times upon reasonable notice to try any of the indictments. Whatever might be said as regards the several postponements up to April 4,1956, it can scarcely be maintained that the defendants may in any way be charged with responsibility for, or acquiescence in, the long delay subsequent to that date.
As purported “ good cause ” for the delay in prosecuting these cases, the District Attorney urges, first, that in the Spring of 1956 and thereafter “disquieting reports” were brought to the attention of the Assistant District Attorney in charge of this investigation “ concerning the apparent change of attitude ” of the People’s key witness, Jeremiah J. Cronin, that an investigation by the assistant “ lent some credence to these reports,” and that as a result it became necessary to re-examine all of the ambulance chasing cases in which this witness had testified before the Grand Jury and that this “ took considerable time.”
Nowhere, however, is ■ there the remotest suggestion that either of the moving defendants had any connection whatever *212 with the alleged apparent change of attitude on Cronin’s part. The District Attorney’s affidavit does not state that Cronin in fact had changed his testimony or that he had actually refused to repeat before a trial jury the testimony given by him before the Grand Jury. Certainly, the District Attorney’s mere suspicion that Cronin might not prove a co-operative witness cannot suffice as “ good cause ” for delaying the trial for over two years.
It is further urged that the delay in this case was due in some part to the fact that in 1956 and in the early part of 1957, the assistant in charge of the ambulance chasing investigation was assigned to other important investigations which prevented him from moving the instant indictments for trial. That, however, cannot be accepted as “ good cause ” for postponing the trial of long-pending indictments. If delay of over two years were to be countenanced on the basis of the prosecutor’s preference of what he regarded as “more important” investigations, a defendant’s fundamental right to a speedy trial could easily be set at naught. It would, indeed, be a complete denial of the guarantee of a speedy trial to hold that a District Attorney could unduly delay the trial of a pending indictment in order to enable him to pursue investigations in other cases.
The People advance as a further cause for delay in the trial of these cases, the fact that the assistant in charge desired to try a related ambulance chasing case (People v. Brown et al.) before proceeding with the trial of either the defendant Winter or Wolf. It is claimed that he was prevented from trying the Brown case, because of the illness of Brown’s counsel, from 1954 to the Spring of 1956. In this connection it is also contended that the Brown case was assigned to a Judge whose part was already overpressured by two lengthy trials involving one John Dioguardi. It appears, however, that the Dioguardi indictments were found almost two years after the first indictment against the defendant Winter and at least a year and a half after the second and third indictments (the latter including Wolf as codefendant) against Winter. In addition, the answering affidavits fail to reveal any reason why the Brown case was not moved for trial in another part of this court. This neglect is particularly significant since the Assistant District Attorney in charge of the instant cases was not the prosecutor in the Dioguardi cases.
In point in this connection is the case of People v. Echols (125 Cal. App. 2d 810). The People there urged as good cause for not trying the case within the prescribed statutory period the claim that the calendar congestion in both civil and criminal *213 cases prevented such trial. It appeared that this case was in an overburdened part of the court. There was nothing in the record to indicate that the prosecutor made any effort to assign the case to another part. The California Court of Appeal used this pertinent language (pp. 813-814, 815): “ It is obvious from the foregoing and from the record that both the court and the district attorney were under the erroneous impression that * * ' * once a criminal case is assigned to a trial department of the superior court, it may remain in the department if other cases filed ahead of it are being tried, even though a defendant’s right to a speedy jury trial be violated. * * * No attempt was made to show good cause other than that the particular department was busy during that time. The San Francisco Superior Court had 22 regular departments and one extra sessions department. No showing was made at any time why this case could not have been tried in one of the other criminal departments ” (pp. 813-814).
A further argument is made by the People that with respect to the defendant Wolf, his attorney, Samuel Segal, Esq., was also counsel for several codefendants in the Brown case and that further delay was necessary because Mr. Segal could not try both cases at the same time.
The fact remains, however, that neither case was ever tried. Whether the defendant Wolf would, for that reason, have sought a postponement of the trial is a matter which could have been determined without speculation if the People had placed the defendant Wolf’s indictment on the calendar for trial. That the People failed to do. The People may not now take advantage of their inaction by resorting to a questionable supposition in place of a demonstrable fact.
An additional reason offered for the delay in this case is the fact that the assistant in charge of the ambulance chasing investigation from its inception resigned from the District Attorney’s office in September of 1957. These cases were, therefore, assigned to other assistants. This, it is claimed, required a very long study of over 2,000 pages - of Grand Jury testimony and voluminous exhibits, as well as the interviewing of a large number of witnesses.
That excuse, however, does not justify the neglect of the People to place the indictments on the Trial Calendar for a period of nine months after such resignation.
Moreover, the claim here made disregards the remedy that was available to the People in order to avoid being held responsible for undue delay. That remedy was clearly defined by the Court of Appeals in the Prosser case (swpra? p, 361) wherein it is *214 stated: ‘‘ Overlooked is the fact that the district attorney may at any time have the case placed on the calendar for a particular day. The defendant and his counsel will be in court and, if at that time the People seek a postponement and the defense fails to oppose or object, its failure will probably import consent in the ensuing delay and bar any later claim that defendant’s right to a speedy trial had thereby been denied. The actual result of the present decision therefore, is merely to impose upon the officers, charged with enforcing the law and who secured the indictment, the quite reasonable, far from burdensome, duty of noticing it for trial.”
On the oral argument of the motion and in the opposing affidavits the People also emphasized the fact that the General Calendar congestion in this court contributed substantially to the excessive delay in the trial of these causes. It is contended, and it is undoubtedly true, that this court, unlike criminal courts in most other counties in our State, has an unusually large volume of criminal business.
While it is true that section C68 of the Code of Criminal Procedure sets a statutory limitation of one term of the court, yet as the calendar presently subsists in this county it is judicially impossible to set for trial all causes within one month after the return of an indictment. Section 668 of the Code of Criminal Procedure was designed as a safeguard, not against court delay due to calendar congestion, but rather against delay in prosecution traceable to laches on the part of the prosecutor (People ex rel. Ianik v. Daly, 142 N. Y. S. 297; see, also, State of Oregon v. Kuhnhausen, 201 Ore. 478, 506 for a review of the applicable authorities). It would indeed be a sorry state of affairs for society if the State were to lose jurisdiction over a defendant who had been indicted in a county in which his case could not be reached for trial within the next term after return of the indictment in the normal exercise of the court’s judicial function because of the pressure of its business.
The normal and proper exercise of the judicial trial function would presuppose that ordinarily the trial of indictments would proceed in some semblance of chronological sequence, that is, a disposition of cases substantially in the order of the finding of the indictment and the apprehension and arraignment of the defendant. Patently, this does not necessarily imply an inflexible rule of trial procedure, because experience over a period of years has taught us that exigencies will frequently arise which will necessitate postponement of the trial of a particular case for such reasons as the absence or illness of a witness *215 or an actual engagement of trial counsel, or for any number of other good reasons. The requirements of “good cause” as set down by the Prosser case would then be satisfied.
Under the undisputed facts presented on the instant motions, the court is not called upon to define a defendant’s rights under section 668 of the Code of Criminal Procedure in the situation where 1 or even 20 terms of the court have passed and the indictment has not been tried solely because of the fact that the pressure of business has prevented such indictment from being reached for trial. That is not our case.
It cannot be gainsaid but that several hundred indictments have been tried in the various parts of this court during the three-and-a-half to four-year period following the return of the indictments and the arraignment of the defendants in the instant case. I refer to indictments which have been returned by Grand Juries subsequent to the indictments which are the subject of these motions. In addition, the records of this court disclose the fact that thousands of other indictments, found subsequent to the present cases, have been disposed of in the various parts of this court by the acceptance of pleas of guilt. This court cannot close its eyes to its own experience that since January 1, 1955, it has itself disposed, either by trials or by plea, of hundreds of indictments returned after the indictments presently under attack. It is reasonable to assume that the other Judges of this court have acted similarly during this same period of time.
In the light of these uncontroverted facts, the People may not rely on the claim of calendar congestion as a cause for delay. For no matter how busy the various trial parts of this court are, such calendar pressure may not be advanced as a reason for delaying a trial of an indictment more than 38 months in one instance, and some 27 months in 2 other instances where the People have chosen to give the “right of way” of trial to innumerable other indictments. As was stated in State ex rel. James v. Superior Court (32 Wn. [2d] 451, 456): “We are not impressed with the argument of the state that the condition of the King county court calendar constituted good cause for the delay in bringing relators to trial. The statute means what it says. It was enacted for the purpose of speeding up the trials of persons accused of crime. It was for their benefit. * * * It may very well be that situations might arise where, because of the condition of the court calendar and the press of business, it would be impossible for the state to bring the accused to trial within sixty days. But here such *216 a situation clearly did not exist, and the prosecutor did nothing. Because of his failure to act, he cannot set up the condition of the calendar as good cause for delay.”
It is finally argued that the defendants have not established that they have been prejudiced by the delay. The opposing affidavit states: “It is well known that defendants are relieved no end when their trials are delayed, because realistically delaying factors militate seriously against the successful prosecution of any criminal case.” This court, however, is at a loss to understand how the prolonged delay in this case to try a member of the legal profession is not prejudicial.
Moreover, a defendant is not required to show prejudice (Matter of Provoo, 17 F. R. D. 183, 198, affd. 350 U. S. 857), and, in fact, the element of prejudice is presumed from the excessive delay (People v. Prosser, supra); and, see, also, Harris v. Municipal Court (209 Cal. 55, 64), where it was stated: ‘ ‘ Furthermore, it is not necessary that the party accused affirmatively show prejudice. Prejudice will be presumed from the violation of this constitutional right. It is enough for the defendant to show that the prosecution has been unreasonably delayed. ’ ’
I am'convinced that the motions of both defendants come squarely within the principles of People v. Prosser (supra) and People v. Chirieleison (3 N Y 2d 170). The delays in each case have been unreasonable, excessive and inordinate, and the People have failed to show good cause therefor.
The defendants would have no right of appeal from a denial of their motions except as an incident to an appeal from a judgment of conviction (Code Crim. Pro., § 517; People v. Latoski, 2 AD 2d 891; People v. Huff, 5 A D 2d 795). On the other hand, the People would have the right to an immediate appeal from an adverse determination (Code Crim. Pro., § 518). It would seem that the interests of justice and society would best be served if the issues of law here presented could be finally resolved in advance of a lengthy and prolonged trial. It seems hardly possible that a delay of an additional few months can prejudice the People where, as here, it would serve the salutary purpose of resolving, in advance, the highly important issues of law raised on the instant motions (see People v. Cilento, 207 Misc. 914, 918, affd. 1 A D 2d 206, mod. 2 N Y 2d 55).
The motions are granted and the indictments as to each are dismissed.
Submit order.