John J. Leahy, J.
The proceeding before the court was initiated by a petition for a writ of habeas corpus, which said writ was signed by this court on the 5th day of March, 1970, and same was made returnable on March 9, 1970. On this latter date the court heard oral argument from counsel for petitioners and respondent. The court reserved decision and both sides were given time to, and have submitted memorandums of law and affidavits in support of, and in opposition to said application. The respondent also requested that all of the prior proceedings in this case be deemed part of this record, and has made available to the court the minutes of the proceedings giving rise to this application, the People’s brief used in the United States Supreme Court also in relation to this matter, and an affidavit submitted by the People to the Appellate Division, First Department, on January 23, 1970.
The court also notes that, subsequent to hearing oral argument, the court received papers on a motion for leave to file a memorandum of amicus curiae NAACP Legal Defense and *485 Educational Fund, Inc. Attached thereto are their memorandum and also a copy of a brief filed by them with the Supreme Court of the United States, October Term, 1969, concerning prior proceedings concerning these petitioners. Said motion to file amicus curiae is granted and said papers are considered in this proceeding.
In view of the gravity of the legal questions raised herein, the unprecedented issues of fact presented and the far-reaching results hereof, the court feels constrained to thoroughly review what has transpired heretofore in reference to these petitioners.
On April 2, 1969 the New York County Grand Jury handed up an indictment charging the petitioners and others with a number of crimes. Twenty-one defendants were named in the indictment but only 18 have been .apprehended. Of the 11 petitioners concerned herein, 2, namely William King, also known as Kinshasa, and Lee Roper, also known as Shaba-Um, fled New York and were apprehended seven months later in Columbus, Ohio.
Bail was .set in the New York County Supreme Court as follows:
Curtis Powell..............................$100,000
Robert Collier......................... 100,000
Richard Moore, a/k/a Analye Dharuba....... 100,000
Alex McKiever, a/k/a Catarra................ 100,000
Lumumba Abdul Shakur.................... 100,000
J ohn J. Casson, a/k/a Ali Bey Has san........ 100,000
Walter Johnson, a/k/a Baba Odinga......... 100,000
Clark Squire .............................. 100,000
Michael Tabor, a/k/a Cetewayo.............. 100,000
Lee Roper, a/k/a Shaba Um................No bail
William King, a/k/a Kinshasa...............No bail
On a habeas corpus proceeding subsequently brought in Supreme Court, Queens County, on behalf of petitioners Clark Squire and Michael Tabor, their bail was reduced to $50,000 each. On appeal to the Appellate Division, Second Department, from this order, the court denied any further reduction of bail as to these two defendants. The New York State Court of Appeals affirmed that ruling in June, 1969. (People ex rel. Tabor v. McGrath, 25 N Y 2d 804.)
Writs of habeas corpus brought on behalf of the other petitioners seeldng a reduction of bail were denied. These orders were appealed to the Appellate Division, First Department, which affirmed. (People ex rel. Shakur v. Commissioner of Correction, 32 A D 2d 921.)
*486 All of the petitioners then sought Federal habeas corpus in the United States District Court. The District Court denied habeas corpus. (United States ex rel. Shakur v. Commissioner of Correction, 303 F. Supp. 303, and 303 F. Supp. 299.)
The petitioners appealed the District Court ruling to the United States Court of Appeals and on two occasions the Court of Appeals affirmed the decision of the District Court (418 F. 2d 243).
The petitioners then sought certiorari in the Supreme Court of the United States pursuant to subdivision (1) of section 1254, of title 28 of the United States Code. This petition was denied.
The petitioners are charged with numerous counts of very grave and serious crimes, including among others: attempted murder and arson in various degrees for allegedly bombing the 44th Police Precinct and a district office of the Board of Education, and for attempting to dynamite the 24th Police Precinct; conspiracy to detonate dynamite, fire bombs or other explosive devices at Macy’s, Alexander’s, Korvette’s, Bloomingdale’s and Abercrombie and Fitch, during the Easter shopping season, and to detonate .six bombs on predeterminded sites along the New Haven Railroad’s tracks.
The afore-mentioned crimes allegedly involved three plots; one to kill police officers by bombing police stations and shooting them; a second, to bomb certain department stores during the Easter shopping season; and a third, to bomb certain railroad facilities. It is further alleged that, pursuant to the arrests of these petitioners, the police seized a number of bombs, bomb components, rifles, shotguns, automatic pistols and revolvers and one of the said rifles was found to have been utilized to shoot three police officers in Brooklyn in 1968.
The petitioners at the time of their arraignment did not request time to make pretrial motions. On May 5, 1969 the Manhattan District Attorney’s office placed the indictment on the trial calendar and requested an immediate trial. The defense requested a three-month adjournment. The case was again on the trial calendar on May 13, 1969, when Justice Murtagh granted an adjournment to June 10,1969 and directed the defendants to file their motions by the end of May.
During the succeeding months and through November 13, 1969, the petitioners filed a multitude of motions, which included 14 motions directed at the indictment, and motions requesting a stay of trial until February, 1970. During this period defendants filed an application for habeas corpus in the United *487 States District Court for the Southern District attacking the bail set for defendants. Judge Palmiest denied the relief sought (303 F. Supp. 303). The defendants then appealed to the United States Court of Appeals for the Second Circuit, which affirmed the denial. The court notes that during this period the record is uncontradicted in that the People constantly pressed for a trial and the defendants persisted in delaying same and requested numerous adjournments, which will be gone into further by this court in this decision. On this point the United States Court of Appeals stated in their memorandum of October 24, 1969 (418 F. 2d 243, 244, supra): “It is apparent from the history of the proceedings in the State Supreme Court that defendants and their counsel have sought delay by every means available since their indictment in April, 1969. The State, on the other hand, has consistently stood ready to proceed to trial.” 0
On November 17, 1969 a superseding indictment was returned and defendants again applied to the United States District Court for the Southern District of New York, and their application was again denied.
On December 18,1969 the case was again on the trial calendar and counsel for defendants advised Justice Murtagh that February 2, 1970 was a firm date for trial.
On February 2, 1970, pretrial hearings were commenced in the New York County Supreme Court before the Honorable Justice John M. Murtagh. The hearings continued until February 25,1970 and, on this date, as this court commented at the oral arguments of this present application, Justice Murtagh took the unprecedented action of recessing said hearings indefinitely because of the continued misconduct of petitioners herein during said hearings.
Following is part of the colloquy that transpired just prior to Justice Murtagh recessing the hearing:
“ Court: The defendants will remain silent.
“ Defendant Johnson: Shut up.
“ Defendant Powell: We ain’t going to remain silent, pig.”
At this juncture this court, having had the opportunity to carefully peruse every page of the three (3) volumes of minutes of the hearings before Justice Murtagh, is compelled to state that the conduct of the petitioners throughout the hearings most certainly is unprecedented in the annals of judicial proceedings.
The conduct and language of the petitioners at those hearings, the unending vilification heaped upon the court, the almost uninterrupted flow of vile, demeaning, vicious, base and threatening *488 language shouted by the petitioners in open court, must be unparalleled in court history. The reading of the minutes shocked the very conscience of this court.
The court’s examination of the minutes shows that there were in excess of 600 interruptions by the petitioners, each one of which can be attributed to the individual petitioner making it. There are dozens of other interruptions attributed to the petitioners as a group that the court reporter was unable to individually identify.
Following is an excerpt from the minutes of some of petitioners ’ outbursts:
“The Court: The defendants are cautioned that they are represented by counsel and are not to speak out.
“ A Defendant: We will speak out whenever we want to unless you want to do the 250 years for us.” (p. 25)
‘ ‘ The Court: The defendants are assured that they will have a fair trial. The motion is denied.
“ Defendant Moore: How can it be fair if Hogan picked you?
“ The Court: You are represented by counsel —
“ Defendant Moore: But I still got a voice and it is going to be heard in this court whether you like it or not.” (p. 32-33)
“Defendant L. Shakur: You expect us to stand for this bullshit?
“Defendant Moore: He told us we’re terrorists. We don’t deserve no time. Why don’t you give us our time in an envelope. We know you’re a faggart.
“ Defendant L. Shakur: It’s on your birth certificate.
“Mr. Crain: Your Honor, I am the attorney on the first motion. I repeat—
“ Defendant Moore: Sit down, Phillips.
“ Defendant L. Shakur: Murtagh says sit down. You have to sit down.
“Defendant Moore: Old Phillips magnesia. He’s full of shit.” (p. 35)
“ The Court: The defendants will be seated.
“ Defendant Moore: No. We are already in jail.
“ Mr. Phillips: May I move we adjourn until two o’clock.
(‘ The Court: The Court declares a recess until two p.m.
“ Defendant L. Shakur: Two o’clock it’s going to be the same thing.” (p. 37)
“ A (continued) We were to be given a warrant which stated in the warrant that the man was to be arrested for a felony, indicating a conspiracy to commit attempted murder, arson,—
“Defendant Moore: Objection, pig.” (p. 71)
*489 “ The Court: Unless these statements are put into the record, the Court cannot take appropriate action.
“ Defendant Moore: Put this on the record. We do not need our attorneys to smile or to make comments that that pig is on the stand. We can do it on our own. We happen to be members of the Black community and this is supposed to be a people’s court and we happen to be people, whether you want to realize that fact or not.
‘ ‘ The Court: Proceed.
“Defendant Moore: Our lawyers do not — in fact, our lawyers have been trying to restrain us for the past ten months.” (p. 76)
“ The Court: Tour motion is denied.
“ Defendant L. Shakur: What you mean. He said there was nothing else in the house.
“ The Court: The weapon is offered for identification, not in evidence.
“ Defendant Moore: You are a liar.
‘ ‘ The Court: And it will be so marked.
“Defendant Moore: You want to know why black people don’t dign this racist mother fucken country. You can understand it. When you get in the car in your commuter train and go back out in your comfortable suburbs, and when them black people go up in there, they’re going to have M 14’s for your ass. You don’t like it, but I don’t care. I don’t care. You want to know my name again 1 Ask the stenographer.” (pp. 107-108)
“ The Court: Continue.
“ Defendant Moore: We are objecting too. You never asked him whether he knew what it was before you showed it to him. You say what you want to do. Murtagh knows. He send them upstate without no attorney. Ask him what he knows.
“ Defendant King: Twenty-five to life for armed robbery.
‘ ‘ Defendant Moore: He is nothing but a hanging racist so hang me. I am just another nigger. I got two more out there to take my place.
“ A Spectator: You got a thousand more.” (p. 122)
“Q Now—
“ Mr. Phillips: I’m goin to ask that the spectators be removed from the courtroom if this is continued.
“ The Court: I will clear this courtroom unless the audience refrains from making sounds, and the defendant will refrain.
“ Defendant Moore: I don’t follow your orders, anyhow, and the people don’t follow your orders. Not the Panthers out there, at least.” (p. 138)
*490 “ The Court: We don’t have encouragement —
‘ ‘ Mr. Crain: I am waiting for him to finish .so I then may-address the Court, and I frankly would suggest that the Court has been doing the very same thing when the very same person was speaking — I am not encouraging him, but I will not shout over his voice, your Honor. He is not my client.
“ The Court: All .right, he is one of the defendants —
“ The Defendant Moore: I don’t think anybody in here can out shout me anyhow. When it comes to a hundred and fifty years, I will out-shout the whole court. ” (p. 218)
“ The Court: You have made a request. The Court had denied it. You have your exception. Please continue like a lawyer.
“ The Defendant Powell: Poor people are entitled to no defense, everything has got to be on the side.
“ The Court: I would like the record to reflect that statement.
“ The Defendant L. Shakur: That is a fact, too.
“ The Court: Kindly give your name for the record and it will be reflected.
“ The Defendant Powell: Doctor Curtis Powell-—
“ A Defendant (unidentified): Fascist pig.
‘ ‘ The Defendant Powell: Put it in the record.
“ The Defendant L. Shakur: You are a fascist lackey, put that on the record. ■
“ The Court: What is your name?
11 The Defendant L. Shakur: Lumumba Abdul Shakur. ’ ’ (pp. 221-222)
“ Mr. Phillips: I’d like the record to reflect that that is the person that created the incident.
This is personally known to Mr. Lefcourt.
“ Defendant Moore: You are personally known in the black community.” (p. 321)
“ The Court: Your motion has been denied. Your clients have an exception.
I ask you in the future not to interrupt —
“ Defendant Moore: We will interrupt because you deny us our constitutional rights.
“ The Court: You will have an opportunity to express yourself on the record.
‘ ‘ Defendant Moore: You can tell him to proceed and I will keep yapping. You deny us our constitutional rights according to the fourth amendment of the rascist constitution of this country, and you know you’re denying us those rights.
(Noise from audience.)
1‘ Mr. Crain: Your Honor —
*491 “ Defendant Moore: You must be insane. And let it go on the record that all the defendants say that, Richard Moore, first off.
“ Defendant Shaba-Um: And defendant Shaba-Um.
“ Defendant McKiever: And Catarra.
“ Defendant Casson: Alibey Hassan.
“ Defendant Collier: Collier.
‘1 Defendant Powell: Powell.
1 ‘ L. Shakur: Abdul Shakur, too.
“ The Court: Will you kindly record those names.” (pp. 72U-725)
‘ ‘ The Court: Please ask your next question.
“ Mr. Crain: May I make an offer of proof.
“ The Court: There is no need for it. You may not.
“ The Defendant Tabor: There is obviously no need for Justice — .” (pp. 748-749)
The minutes also indicate interruptions from defendant Johnson on pages 1713,1550, 413, def endant Roper on page 255, defendant Squire on pages 1135, 1209 and 1472.
The petitioners regularly, upon entering the courtroom, would raise their fists and shout “ Power ” to the spectators in the courtroom and from the audience would usually be a boisterous reply. Between the numerous interruptions from the petitioners and the audience, Justice Murtagh: was forced to repeatedly caution the spectators, clear the courtroom, and delay the proceedings.
Despite the persistently deplorable conduct of the petitioners, the record indicates that Justice Murtagh conducted the proceedings in the highest traditions of the law in order to give a fair, orderly and speedy trial to the petitioners and he certainly evinced the finest sense of judicious temperament.
Petitioners’ memorandum of law in support of their petition for a writ of habeas corpus raises numerous points of law in support of their argument that Justice Murtagh’s action denied to these petitioners fundamental constitutional guarantees, which counsel on both sides agreed at the hearing was the basic issue involved.
The major premise of petitioners’ Point I in their memorandum correctly asserts that the writ of habeas corpus is the proper remedy to raise the question of the denials of constitutional rights complained of herein.
‘ ‘ A habeas corpus proceeding tests the legality of an arrest, detention, or imprisonment and relieves from unlawful imprisonment. If persons detained have not been accorded their lawful rights, or if their constitutional guaranties have been unlawful *492 invaded, it is the judicial function of this ancient and powerful writ to redress such legal wrongs and to maintain such basic safeguards; a person committed always has the right to resort to the ancient and constitutional remedy of habeas corpus.” (25 N. Y. Jur., Habeas Corpus, § 1, pp. 500-501; People ex rel. Jackson v. Ruthazer, 196 Misc. 34, affd. 276 App. Div. 832; People ex rel. Hower v. Foote, 130 Misc. 224; People ex rel. Fusco v. Ryan, 204 Misc. 861; People ex rel. Peltz v. Brewster, 232 App. Div. 1, affd. 256 N. Y. 558.)
• ‘ ‘ The remedy against illegal imprisonment afforded by this writ is placed beyond the pale of legislative discretion and may be suspended only when public safety requires. It was designed to protect the liberty of the citizen against judicial despotism.” (People ex rel. Amarante v. McDonnell, 100 N. Y. S. 2d 463, 470-471.) (Emphasis supplied.)
The court will take up the issues raised in points II, TV, V, VI, VII and VIII of petitioners’ memorandum and defer until last point III which raises the major question of the alleged denial of petitioners’ rights to a speedy trial in violation of the Fourteenth and Sixth Amendments of the United States Constitution.
In the several afore-mentioned points raised in petitioners’ brief they contend that the order of Justice Murtagh recessing the hearings lacks statutory authority and is therefore beyond the court’s jurisdiction thus violating the petitioners’ right to due process of law; that said action denies substantial and procedural guarantees of due process protected by the Fourteenth Amendment of the United States Constitution; violates petitioners’ rights against self incrimination; violates their rights to equal protection of the law under the Fourteenth Amendment; said action subjects petitioners to involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution; and the last contention that the rights of each defendant are individual and personal and cannot be conditioned on the .rights or acts of another.
In points II, IV and VIII of plaintiffs ’ brief they fallaciously base their arguments on incorrect premises, keeping in mind the following: the writ presently before this court is based on the last action taken by Justice Murtagh ; the petitioners had been arrested, arraigned, bail had been set (the issue of bail having been appealed by petitioners up to the United States Supreme Court, and which was upheld throughout); pretrail hearings had commenced (only after constant prodding and insistence by the People); the petitioners since their arrests have been incarcerated ; and finally, that after 12 days of hearings, as heretofore *493 referred to, Justice Mxjbtagh stated, in part: ‘ ‘ Hearings are now recessed indefinitely.”
“ At any time the defendants may make a motion in writing for a resumption of the hearings. ’ ’
‘ ‘ If the defendants and their counsel are sincere in wishing a speedy and fair trial, the Court expects that such motion will be filed within the next 48 hours. ’ ’
“ Court will give motion favorable consideration only if it is supported by an unequivocal assurance that each defendant will give complete respect to the Court during the continuance of the hearings and during the course of the trial to follow * * *
Such statement is to be signed by each and every one of the defendants.”
‘ ‘ This court is responsible for maintaining proper respect for the administration of criminal justice and preventing any reflection on the image of American justice. That responsibility will be discharged.”
In point II of petitioners’ memorandum they refer to “ the order committing * * * summary punishment for contemptuous conduct * * * ”, they cite section 750 of the Judiciary Law (which sets forth the powers of the court to punish for criminal contempt), also cited in section 215.50 of the Penal Law (which defines criminal contempt); point IV refers to “ The incarceration or punishment * * * The commitment of these petitioners * * * and Even in contempt * * in point VIII petitioners state ‘ ‘ petitioners indefinite incarceration without a trial
There is no suggestion whatsoever in the record indicating the invocation of the court’s power to punish for contempt, summarily or otherwise, by Justice Mxjbtagh.
The petitioners ’ conduct was not ruled upon at that time, nor was their situation as to bail or freedom changed. As to the question of petitioners’ right to a speedy trial, the court will take this up momentarily.
As to point V of petitioners ’ memorandum, they contend that Justice Mxjbtagh’s statement that he would give favorable consideration to petitioners’ motion for a resumption of the hearings if “it is supported by an unequivocal assurance that each defendant will give complete respect to the court during the continuance of the hearings and during the course of the trial to follow and an assurance that the defendants are now prepared to participate in a trial conducted under the American system of criminal justice ”, is a condition precedent demanded of the petitioners, in violation of the Fourteenth and Fifth Amend *494 ments of the United States Constitution, which protects against self incrimination.
The court finds this to he at least a very tenuous argument and without foundation in law or fact. The statement requested very clearly refers to the future conduct of the petitioners. Furthermore, the respondent clearly states on page eight of its affidavit that the attorney for petitioners could draft the statement so that it would in no way serve to incriminate a defendant for past misconduct.
In view of the atrocious, unprecedented conduct of the petitioners during the hearings, this court finds Justice Mttrtagh’s request for a statement as to the petitioners’ intentions for their future conduct to be very reasonable and to give the court the opportunity to proceed expeditiously, for petitioners benefit, with the trial, without necessitating the court’s devising some other and certainly more time-consuming method to proceed.
Petitioners in point VI contend that their incarceration is under a formula that depends solely (emphasis .supplied) on their inability to meet the “ high bail ”, and therefore violates their rights under the Fourteenth Amendment of the United States Constitution. What petitioners are doing here is to completely overlook the absolutely clear-cut, statutory and inherent authority and power of the court to remand defendants on bail in order to curtail interference with the expeditious trial of the case (Code Grim. Pro., § 422).
The court has the inherent, discretionary power-to remand a bailed defendant when he appears for trial. (People ex rel. Ackerson v. Board of Supervisors of Rockland County, 166 App. Div. 22; Code Crim. Pro., § 422.)
This power is to be “ exercised whenever there is reason to believe that it is necessary ‘ to render fruitless ’ any attempt to interfere with witnesses or jurors or with the expeditious trial of the action or with the proper administration of justice. Every court engaged in the trial of a criminal case, as an incident to its inherent power to manage the conduct of the proceedings before it, is empowered ‘ to revoke bail during the course * * * [of the trial] when such action is appropriate to the orderly progress of the trial and administration of justice; ’ it is sufficient if the record discloses some rational basis for the Trial Judge’s determination; and, since it is imbued with the atmosphere of the trial and has the ‘ feel ’ of the case, his determination is entitled to great weight ’ ’. (People ex rel. Calascione v. Ramsden, 20 A D 2d 142, 148, affd. 13 N Y 2d 1113.)
*495 The court’s reference therein to the “atmosphere” of the trial and the “ feel ” of the case could have no stronger applicability indicating some basis for a Trial Judge’s determination, than in the hearings conducted before Justice Murtagh, where thousands of pages of the minutes and the respondent’s affidavits are replete with incidents of fist fights in the courtroom, demonstrations outside the courthouse, the continual interruption of the proceedings by petitioners, the various threats made and, in finality, the utter brazen, contemptible fire-bombing of the Trial Judge’s home.
Petitioners cite in their memorandum that preventive trial is another version of preventive detention, totally ignoring the heroic efforts of the People and the Trial Justice to give the petitioners a speedy, fair and orderly trial, and the uncontradicted, obvious actions on the part of the petitioners and. their counsel to delay the trial. The thrust of petitioners’ argument therein seems to criticize Justice Murtagh’s actions primarily because of their very effectiveness, and completely overlooks the fact that if petitioners refuse to comply therewith, the court will proceed — after taldng other necessary steps to insure a speedy, fair and orderly trial to petitioners — despite their conduct, to protect the rights of the petitioners, the court and the People.
Petitioners contend in point VII that the rights of each defendant are individual and personal and cannot be conditioned on the rights or acts of another. As a general statement this is true, but the facts of this matter do not pertain thereto. At no time have any of the petitioners asked for a severance of their trial. The People emphatically and unequivocally stated on oral argument that they stand ready to proceed with any single defendant who is prepared for an orderly hearing.
The minutes of the hearings set forth quite clearly the conduct of each individual defendant.
Point III of petitioners’ memorandum raises what the court deems to he the crux of petitioners’ writ — their allegation that they have been denied the right to a speedy trial in violation of the Fourteenth and Sixth Amendments to the United States Constitution.
The pretrial hearings are part of the trial and constitutional guarantees are applicable thereto. (People v. Anderson, 16 N Y 2d 282.)
The constitutional guarantees of the right of a speedy trial extend to all persons accused of criminal offenses. (People v. Prosser, 309 N. Y. 353; People ex rel. Seiler v. Warden of City Prison, 199 Misc. 570.)
*496 The Sixth Amendment right to a speedy trial is enforceable, by virtue of the Fourteenth Amendment, against the States.
11 A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances * * * The right to a speedy trial is necessarily relative; it is consistent with delays, and whether such a trial is afforded must be determined in the light of the circumstances of each particular case as a matter of judicial discretion.” (22A C. J. S. Criminal Law, § 467 [4]; emphasis supplied.)
Petitioners in their memorandum cite United States v. Roberts (293 F. Supp. 195, 198 [S. D. N. Y., 1968]). In this case the defendant’s case was put on the calendar more than five years after he was indicted for tax evasion. They also cite Smith v. Hooey (393 U. S. 374). In this case the defendant was indicted in 1960 for theft and, though he requested numerous times that he be brought to trial, no action was taken by the People for over six years.
Contrast the circumstances of those cases with the case now under consideration. In those cases one defendant was involved, each charged with a single nonviolent crime. In the present case there are numerous defendants charged with a number of serious violent crimes and conspiracy to commit same. In the aforementioned cases, the People took no action for years. In this case the People, approximately 33 days after indicting the petitioners placed the cause on the trial calendar and requested an immediate trial. The counsel for petitioners then made the first of numerous requests for an adjournment, which they continued to do until December of 1969. Despite all of the delaying tactics employed by the defense, the People commenced pretrial hearings therein on February 2, 1970.
The court feels it may help clarify this matter by relating the facts of this case to the four criteria set forth in the case of Klopfer v. North Carolina (386 U. S. 213 [1967]) and which are set forth on page 7 of petitioners’ memorandum of law. Therein it was held that four factors are relevant to a consideration of whether denial of a speedy trial assumes due process of Sixth Amendment proportions:
(1) The length of the delay. Justice Murtagh recessed the hearings on February 25-, 1970, after being subjected to 12 days of the most abominable conduct on the part of the petitiqners. He then set down the most simple and reasonable conditions for petitioners to meet, in order to proceed with the hearings *497 as .speedily and orderly as possible and, of course, if petitioners refuse to conduct themselves in such a proper manner to allow the hearings to proceed immediately, it is in effect the petitioners themselves who are compelling the court to then take other more time-consuming measures to insure a speedy, fair and orderly trial of the petitioners.
(2) The reason for the delay. The reading of the thousands of pages of minutes of the hearings, stating the language used and the conduct of the petitioners, amply and completely answers this.
(3) The prejudice to defendant. All of the proceedings — considering the scope and magnitude of the crimes charged-^ were handled and moved by the People with dispatch, until petitioners’ conduct made it impossible to proceed. There has been no prejudice to the petitioners, other than the delay of these hearings — induced solely and completely by the petitioners themselves.
(4) Waiver by the defendant. “ Just what constitutes waiver of the right of speedy trial is a question of fact to be determined on the circumstances of each case, and the court must consider not only the actions of the state but actions of accused as well * * *. Ordinarily, the right to a speedy trial is waived by conduct on the part of accused indicating that he is not intent on a speedy trial ”. (22A C. J. S., Criminal Law, § 477 [emphasis supplied]; People v. Winter, 18 Misc 2d 205; People v. Piscitello, 7 N Y 2d 387.)
As to the conduct of the People and the court, it is eminently clear from the record that since April 2, 1969, they exemplified the highest and finest traditions of the law and judiciary of our great State and Nation and should remain a shining example of the fair, dignified and reasonable operation of our judicial system.
In reference to the conduct of petitioners, again, the reading of the minutes as to their conduct speaks for itself. Furthermore, on May 13, 1969, the then chief defense counsel for petitions, Mr. Kunstler, advised the court: “We are looking out for our clients ’ interests in our own ways and we think that your Honor’s action in speeding them to trial, is rather than protecting them, is disastrously hurting them. * * * We are waiving our right to a speedy trial. That’s not your Honor’s prerogative. It’s our prerogative, the defendants.” (Emphasis supplied.)
It is not only the right but the absolute duty of the court “ to see that the trial is conducted in an orderly, dignified manner, and that the trial is conducted in a solemn, proper, and legal *498 manner * * * and that proper decorum is maintained in the courtroom while a trial is under way.” (88 C. J. S., Trial, § 36, and numerous cases cited there.)
In McDonald v. Pless (238 U. S. 264 [1914]) a nnanimous court (citing many cases) stated as follows: “ The conduct of parties, witnesses and counsel in a case, as well as the conduct of the jurors and officers of the court may be of such a character as not only to defeat the rights of litigants but it may directly affect the administration of public justice. In the very nature of things the courts of each jurisdiction must each be in a position to adopt and enforce their own self-preserving rules. (Nudd v. Burrows, 91 U. S. 427(4), 441; Railroad Co. v. Horst, 93 U. S. 291, 300; Grimes Co. v. Malcom, 164 U. S. 483, 490; Lincoln v. Power, 151 U. S. 436; 442; Burgess v. Seligman, 107 U. S. 20, 33; Liverpool & Co. v. Friedman, 133 Fed. Rep. 716.”
It is very apparent from an examination of the minutes of the pretrial hearing that these defendants, with the knowledge and silent acquiescence of their counsel, indulged in a course of conduct for the sole purpose of disrupting this trial with the ultimate view of depriving the People of the State of New York of trying these defendants for the crimes which it is alleged they have committed.
The court would like to quote briefly from a speech prepared for delivery at St. John’s University Law School by the Chief Judge of the Court of Appeals, the Honorable Stanley H. Fuld, which appeared on the front page of the New York Law Journel, dated March 25, 1970. After remarking that the constitutional guarantees of defendants must be protected, and that a fair trial must be given under our system of justice, Judge Fuld went on to say: ‘ ‘ But, nonetheless, one thing is clear. Defendants cannot be allowed to turn court proceedings into a shambles. Order and decorum there must be if there is to be a meaningful trial. The issue is joined between the rule of law and anarchy.” (Emphasis supplied.)
Accordingly the writ is dismissed.