Max Bloom, J.
Relators, Joan Bird and Afeni Shakur, seek, by habeas corpus, to review a determination by Mr. Justice Murtagh, made during the course of trial, revoking their bail and remanding them to custody pending further order of the court. The plain purpose of the application is to place the issue in a form appropriate for appellate review.
Bail for these two defendants was exonerated on February 8, 1971, under circumstances which, hereafter, will be adverted to. Thereafter, on February 19, 1971, relators brought this proceeding on before me. At the outset, I voiced the opinion that, despite my conceded power and jurisdiction to pass upon the issues in dispute (People ex rel. Klein v. Krueger, 25 N Y 2d 497; People ex rel. Shapiro v. Keeper of City Prison, 290 N. Y. 393; cf. People ex rel. Epton v. Nenna, 25 A D 2d 518), for one Judge of this court to sit in review of a determination rendered by another Judge of co-ordinate jurisdiction was of doubtful propriety. Such intervention, when sought to control the conduct of a trial then going on before another Judge, seemed to me to be grossly improper. By consequence, and in the interests of orderly procedure, I referred the matter to Mr. Justice Murtagh.
The application for the writ came on before Mr. Justice Murtagh on February 22, 1971. He, prompted by the punctilio of an honor the most sensitive, indicated that “ in fairness to the defendants Joan Bird and Afeni Shakur, it is believed that they are entitled to a determination of their application by *734 a justice other than the one who is directing their commitment. ’ ’ Accordingly, he referred the proceeding to Mr. Justice Riccobono. On February 25, 1971, when the matter came on to be heard before Mr. Justice Riccobono, counsel objected, insisting that since the matter was originally brought on before me it should be heard by me if it were to be heard before any Judge other than Mr. Justice Mubtagh. Although I am no more persuaded now of the propriety of action by me on this application than I was on February 19, I consented that the matter be referred to me so that there will be a determination from which appeal will lie.
The facts leading to the revocation of bail of these relators find origin in the following circumstances: On April 2, 1969, an indictment was handed down charging 22 persons, among whom were these relators, with a series of crimes including conspiracy to commit murder, conspiracy to bomb police precinct stations and other public offices, conspiracy to bomb various department stores and conspiracy to bomb sites along the New Haven Railroad tracks.
Of the 22 indicted, 3 were never apprehended[1]; two were in detention in New Jersey[2]; two were granted youthful offender treatment[3]; one[4] obtained a severance because of illness; and one[5] was released on bail and jumped bail prior to the commencement of the trial before Mr. Justice Mubtagh. The remaining 13, consisting of the 2 relators, Curtis Powell, Robert Collier, Ales McKiever, Lamumba Abdul Shakur, John J. Cass on, Walter Johnson, Clark Squire, Lee Roper, William King, Richard Moore and Michael Tabor, are currently on trial.
*735 Bail was fixed for all defendants except Roper and King[6]. Numerous habeas corpus proceedings were thereafter instituted (People ex rel. Tabor v. McGrath, 25 N Y 2d 804; People ex rel. Shakur v. Commissioner, 32 A D 2d 921; United States ex rel. Shakur v. Commissioner, 303 F. Supp. 303, affd. 418 F. 2d 243, cert. den. 397 U. S. 999; United States ex rel. Shakur v. McGrath, 306 F. Supp. 507; People ex rel. Shakur v. McGrath, 62 Misc 2d 484).
Of the total of 22 defendants, 8 made bail[7].
On February 8, 1971, during the progress of the trial, Moore and Tabor, 2 of the 13 defendants currently on trial, absented themselves. The colloquy which ensued among counsel and the court leads clearly to the conclusion that they were no longer subject to the jurisdiction of the court. Indeed, a statement by the Assistant District Attorney in charge of the prosecution of this case gives hint that differences had arisen between Moore and Tabor and the leadership of the Black Panther Party. He stated on the record of proceedings for February 9 that, some two months earlier, Tabor had married a lady by the name of Connie Matthews; that Miss Matthews was an Algerian citizen and an official of the Black Panther party in California; that her visa will expire on March 3 or 5, at which time she would be required to leave the country and that on February 5, Tabor, Miss Matthews and Moore appeared on a radio program in New Haven “ and discussed the Black Panther Party and criticized its leaders.”
Immediately following the failure of Moore and Tabor to appear for trial on February 8, Mr. Justice Murtagh expressed his concern ‘ ‘ about the continuance of this trial with any defendant on bail.” Thereupon, pursuant to section 422 of the Code of Criminal Procedure[8], he exonerated the bail of these relators and remanded them to custody pending further order of the court.
At the hearing of the application for the writ before Mr. Justice Murtagh on February 22 and prior to the reference to Mr. Justice Riccobono, Assistant District Attorney Phillips, *736 who is in charge of the prosecution, advised the court that information had come to him from the FBI that Zayde Shakur, the brother of Lamumba Abdul Shakur[9], one of the defendants, went to Detroit on January 19, 1971, and contacted Black Panther Party officials in that city for the purpose of obtaining false identification cards and false work papers. Purportedly, he was arranging for the flight of some or all of those currently on trial who were then at liberty and desired these documents in that connection. It is further pointed out that, although Zayde did not specifically mention the names of any defendants in connection with the possible use of these documents, Moore, Tabor and Josephs have since absconded.
Mr. Justice Mubtagh briefly reviewed the status of the indicted defendants, pointing out that three were never apprehended. Of the remaining 19, 8 made bail. Of these 8, 4 have fled the jurisdiction, two who have not been before him[10] are still on bail, and two, the relators-, have been remanded. He further indicated that the evidence now before the jury, if given credence, has a strong tendency to establish the guilt of the defendants, including these relators. He concluded that to insure the orderly continuance of the trial “ at least as to those defendants still before the Court ”, remand of the relators was required and he reaffirmed his direction of February 8.
Thus, at the very threshold, there is presented the problem of what evidence the court may take cognizance. Is February 8, the date upon which remand was ordered, the cutoff date? Or is consideration to be given to the evidence presented on February 22, when the decision of February 8 was reaffirmed?
Although no case has been brought to my attention which is directly in point, the circumstances leading to the disposition in People ex rel. Burley v. Agnew (28 N Y 2d 658), is most persuasive. On January 13, 1971, the Court of Appeals, in People ex rel. Menechino v. Warden (27 N Y 2d 376), held that the constitutional right to counsel under the Sixth and Fourteenth Amendments to the Federal Constitution applied to a parole revocation proceeding. The failure to comply with constitutional requirement warranted granting of the great writ. The following day leave to appeal was granted in Burley (People ex rel. Burley v. Agnew, 28 N Y 2d 551) in a memo *737 radum requesting counsel ‘ ‘ to brief the question of the possible retroactive application of” Menechino. The following month the appeal in Burley was dismissed “ upon the ground that relator has been released on parole and, therefore, his liberty is no longer restrained to such a degree as to entitle him to the extraordinary writ of habeas corpus (People ex rel. Wilder v. Markley, 26 N Y 2d 648; CPLR 7002 subd. [a]) ”. Thus, the intimation is plain that the right to the writ depends on circumstances existing at the time of its consideration by the court, even though that consideration be in the final stages of appeal.
This conclusion is strongly supported by practical necessity as well as logic. Were I, hypothetically, to grant the writ based on the record as it existed on February 8, and to fix bail for these relators, Mr. Justice Murtagh could, with complete propriety, again exonerate bail and remand relators, pursuant to section 422 of the Code of Criminal Procedure, on the basis of the record as it existed on February 22.
We come then to the merits of the controversy. At the outset, the issue of the extent of permissible review intrudes itself. Here, the authorities are clear. The court hearing the writ may not exercise an independent discretion as to the propriety or amount of bail. His authority is limited to determining whether the revocation of bail by the trial court constituted an abuse of discretion, and whether the reasons which provoked it are insufficient in law. He may not substitute his judgment for that of the trial court absent a showing that action of the trial court was illegal (People ex rel. Shapiro v. Keeper of City Prison, supra; Fernandez v. United States, 81 Sup. Ct. 642). Only if the revocation is not supportable may the ruling of the trial court be undone (People ex rel. Klein v. Krueger, supra). To overcome the claim that it is arbitrary, the revocation must “ be buttressed by a real showing of reasons therefor” (People ex rel. Shapiro v. Keeper of City Prison, 290 N. Y. 393, 398, supra; see, also, People ex rel. Rupoli v. McDonnell, 277 App. Div. 74; People ex rel. Thompson v. Warden, 214 N. Y. S. 2d 171).
Where, however, the circumstances are such that the trial court is led to believe that the revocation of bail is necessary to expedite the trial of the action or to prevent interference with or frustration of the administration of justice, the trial court is warranted in exercising his power under section 422 of the Code of Criminal Procedure and revoking bail. “ It is sufficient if the record discloses some rational basis for the *738 Trial Judge’s determination; and, since he is imbued with the atmosphere of the trial and has the 1 feel ’ of the case, his determination is entitled to great weight ” (People ex rel. Calascione v. Ramsden, 20 A D 2d 142, 148-149, affd. 13 N Y 2d 1113).
Here the proof is uncontrovertible that 4 of the 8 defendants admitted to bail have absconded. Three were never apprehended. Two were arrested only after a seven-month search by the FBI; and two were apprehended in New Jersey by reason of arrests for other crimes. While these relators cannot be made answerable for the actions of other defendants (Stack v. Boyle, 342 U. S. 1), neither, can the pattern disclosed by the proof be ignored.
The further thwarting of justice, in the event that the bail of these relators is continued, particularly in light of the represented activities of Zayde Shakur, remains a possibility which is not lightly to be dismissed. Accordingly, it cannot be said that the action of Mr. Justice Mubtagh in revoking bail was arbitrary and without foundation in reason.
Additional compassionate reasons are urged for continuing Afeni Shakur on bail. She is pregnant and has, allegedly, suffered a number of miscarriages in the past. Much as these reasons commend themselves to the court, the issue remains one of the discretion of the trial court, and it cannot be said that Mr. Justice Mubtagh, in light of the entire complex of circumstances, ignored the objective realities.
The constitutional question here raised has been dealt with extensively in Judge Palmiebi’s cogent opinion (United States ex rel. Shakur v. Commissioner, 303 F. Supp. 303, affd. 418 F. 2d 243, cert. den. 397 U. S. 999; see, also, People ex rel. Gonzalez v. Warden, 21 N Y 2d 18, cert. den. 390 U. S. 973). There is no need to further deal with it here.
Accordingly, the application for the writ of habeas corpus is dismissed.

. Two, Nathaniel Burns and Larry Mack, are reportedly in Algeria, while the third, Thomas Berry, was never found despite an intensive Nationwide search by the FBI.

. Donald Weems and Richard Harris. Weems has been convicted in New Jersey and has been returned to New York to stand trial. However, he is not among the 13 now on trial before Mr. Justice Mubtagh. Harris is still held in New Jersey.

. Josephs and Epps. Both were on the calendar of Part 31 on February 26, 1971. Epps appeared and, at the request of defendant, consented to by the District Attorney, his .ease was adjourned. Josephs, whose trial was set for March 15, 1971, and was accelerated to February 26, 1971, when the District Attorney learned that he absconded, did not appear. A bench warrant for his arrest was ordered. However, the Clerk was directed to hold his bond until March 15 so that if he appeared on or before that day, no forfeiture would occur.

. Lee Berry. He is currently at liberty, on bail.

. Fred Richardson.

. Roper and King were apprehended in Columbus, Ohio, after a seven-month search. Since their apprehension they have been held without bail.

. Richardson, Berry, Josephs, Epps, Moore, Tabor, Bird and Afeni Shakur.

. Section 422 of the Code of Criminal Procedure reads as follows: “When a defendant, who has given bail, appears for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide the judgment or further order of the court; and he must be committed and held in custody accordingly.”

. There is considerable dispute as to the relationship of Lamumba Shakur and Afeni Shakur, one of the relators. The prosecution contends that she is the “ common-law ” wife of Lamumba and therefore the “ sister-in-law ” of Zayde. Afeni denies any such relationship.

. Berry, who received a severance because of illness and Epps, who faces a youthful offender charge which is of less than criminal dimension.